## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MORANA, Individually and On Behalf Of All Other Persons Similarly Situated, | |
| Plaintiff, | Case No.  1:20-cv-02797-RA |
| v. | |
| PARK HOTELS & RESORTS, INC. d/b/a HILTON WORLDWIDE HOLDINGS, INC., HLT NY WALDORF LLC, HILTON DOMESTIC OPERATING CO. INC., and WALDORF=ASTORIA MANAGEMENT LLC, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

**DLA PIPER LLP (US)**
Joseph A. Piesco, Jr., Esq.
joseph.piesco@dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF RELEVANT FACTS.....................................................................4

   I.   Background ...................................................................................................4

   II.   Plaintiff's Employment at the Waldorf Astoria ..........................................5

   III.  There are only 66 Members of the Putative Class......................................6

   IV.  Plaintiff's Claims Arise from the CBA and the BSA ..................................6

   V.   The CBA's Mandatory Grievance and Arbitration Procedures Apply to Disputes Concerning Gratuities ......................................................................................8

   VI.  Plaintiff Continues His Employment at the New York Hilton and Executes an Arbitration Agreement.................................................................................8

   LEGAL ARGUMENT ............................................................................................9

   I.   Subject-Matter Jurisdiction under CAFA does not Exist ...........................9

      A.   Plaintiff's Article III Standing is Limited to Waldorf Astoria Banquet Services Employees ....................................10

      B.   There are Less Than 100 Members in the Putative Class ....................11

   II.   Alternatively, the Action Should be Compelled to Arbitration ...................12

      A.   Federal Policy Strongly Favors the Enforcement of Arbitration Agreements ......12

      B.   Arbitration Properly Should be Compelled.........................................13

         1.   Plaintiff's Claims are Subject to the Individual Arbitration Agreement ...13

         2.   The CBA's Arbitration Article Requires Plaintiff to Arbitrate His Claims. ................................................................................14

      C.   Arbitration Must Be on an Individual Basis........................................18

   III.  Plaintiff's FAC Fails to State A Claim .......................................................18

      A.   Plaintiff Fails to State a Claim Under the New York Labor Law or for Unjust Enrichment...................................19

   IV.  Defendants HWH and HLT Should be Dismissed .......................................21

      A.   The Court Lacks Jurisdiction Over HWH.............................................21

         1.   The Court Lacks General Jurisdiction Over HWH ..................22

         2.   The Court Lacks Specific Jurisdiction Over HWH.................23

      B.   Neither Entity is a Joint Employer .....................................................24

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
    458 F. Supp. 2d 160 (S.D.N.Y. 2006)...................................................................11

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*,
    445 F.3d 121 (2d Cir. 2006) ...........................................................................12

*Ansoumana v. Gristede's Operating Corp.*,
    255 F. Supp. 2d 184 (S.D.N.Y. 2003) ...............................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .........................................................................................19

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .........................................................................................18

*Barry v. Curtin*,
    993 F. Supp. 2d 347 (E.D.N.Y. 2014)...............................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................19

*Cartagena Enters., Inc. v. J. Walter Thompson Co.*,
    2013 WL 5664992 (S.D.N.Y. Oct. 16, 2013) ....................................................14

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...........................................................................19

*Chufen Chen v. Dunkin' Brands*,
    954 F.3d 492 (2d Cir. 2020) ...........................................................................23

*Chung Chang v. Warner Bros. Entm't*,
    2019 WL 5304144 (S.D.N.Y. Oct. 21, 2019) ....................................................15

*Coenen v. R.W. Pressprich & Co.*,
    453 F.2d 1209 (2d Cir. 1972)...........................................................................14

*Commc'n Partners Worldwide, Inc. v. Main St. Res.*,
    2005 WL 1765712 (S.D.N.Y. July 26, 2005) ....................................................24

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012) .......................................................................................12

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*,
    586 F. App'x 768 (2d Cir. 2014) ......................................................................23

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
  790 F.3d 411 (2d Cir. 2015) ...................................................................................10

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 1117 (2020) ......................................13

*Danisco A/S v. Novo Nordisk A/S*,
  2003 WL 282391 (S.D.N.Y. Feb. 10, 2003)..........................................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ...........................................................................................13

*In re Domino's Pizza Inc.*,
  2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018)........................................................................24

*Eka v. Brookdale Hosp. Med. Ctr.*,
  2016 WL 11263669 (E.D.N.Y. Sept. 2, 2016) ...................................................................16

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ........................................................................................18

*Freeman v. River Manor Corp.*,
  2019 WL 1177717 (E.D.N.Y. Mar. 13, 2019),
  *mod. on recon.*, 2019 WL 3578432 (E.D.N.Y. Aug. 5, 2019)...............................................17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167 (2000) ...........................................................................................10

*Glatt v. Fox Searchlight Pictures Inc.*,
  2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013).......................................................................24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) .....................................................................................15, 16

*Herman v. RSR Sec. Servs. Ltd.*,
  172 F.3d 132 (2d Cir. 1999) ...................................................................................24

*Hidalgo v. Amateur Athletic Union of U.S., Inc.*,
  2020 WL 3442029 (S.D.N.Y. June 24, 2020) ...................................................................15

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
  134 S. Ct. 736 (2014) ........................................................................................11

*Hugee v. SJC Grp., Inc.*,
  2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013)......................................................................25

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991) ...................................................................................19

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (N.Y. Ct. Aps. 2009).......................................................................21

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
   342 F. Supp. 2d 207 (S.D.N.Y. 2004)...................................................................23

*Irizarry v. Catsimatidis*,
   722 F.3d 99 (2d Cir. 2013) ..................................................................................24

*Johnson v. D.M. Rothman Co.*,
   861 F. Supp. 2d 326 (S.D.N.Y. 2012)...................................................................17

*In re Kingate Mgmt. Ltd. Litig.*,
   2011 WL 1362106 (S.D.N.Y. Mar. 30, 2011) ......................................................11

*Kone v. Joy Constr. Corp.*,
   2016 WL 866349 (S.D.N.Y. Mar. 3, 2016)...........................................................21

*Kowalewski v. Samandarov*,
   590 F.Supp.2d 477 (S.D.N.Y. 2008)....................................................................12

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ........................................................................................18

*Levy v. Verizon Info. Servs., Inc.*,
   498 F. Supp. 2d 586 (E.D.N.Y. 2007)..................................................................16

*Licciex rel. Licci v. Lebanese Canadian Bank*,
   SAL, 673 F.3d 50 (2d Cir. 2012) ...................................................................22, 23

*Lopez v. Acme Am. Envtl. Co.*,
   2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) .......................................................25

*Maldonado v. BTB Events & Celebrations, Inc.*,
   990 F. Supp. 2d 382 (S.D.N.Y. 2013) ...........................................................20, 21

*In re Michael Stapleton Assocs., Ltd.*,
   2018 WL 3962931 (S.D.N.Y. Aug. 17, 2018)......................................................25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).................................................................................................12

*N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*,
   25 F. Supp. 3d 459 (S.D.N.Y. 2014)....................................................................25

*Rabin v. Mony Life Ins. Co.*,
   387 F. App'x 36 (2d Cir. 2010) ...........................................................................21

*Ragone v. Atlantic Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) ................................................14

*Ross v. Bank of America*,
    524 F.3d 217 (2d Cir. 2008) ................................................10

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (N.Y. Ct. Aps. 2008) ................................................20

*Schapp v. Mastec Servs. Co.*,
    2014 WL 1311937 (N.D.N.Y. Mar. 31, 2014) ................................14

*Shearon v. Comfort Tech Mech. Co.*,
    936 F. Supp. 2d 143 (E.D.N.Y. 2013)................................................17

*Smith v. Manhattan Club Timeshare Ass'n, Inc.*,
    944 F. Supp. 2d 244 (S.D.N.Y. 2013) ................................................9

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ................................................23

*Steelworkers v. Am. Mfg. Co.*,
    363 U.S. 564 (1960) ................................................15

*Steelworkers v. Ent. Wheel & Car Corp.*,
    363 U.S. 593 (1960) ................................................15

*Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ................................................15

*Stolarik v. New York Times Co.*,
    323 F. Supp. 3d 523 (S.D.N.Y. 2018) ................................................17

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................18

*Stroud v. Tyson Foods, Inc.*,
    91 F. Supp. 3d 381 (E.D.N.Y. 2015)................................................22, 23

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013) ................................................18

*Thomas James Assocs. v. Jameson*,
    102 F.3d 60 (2d Cir. 1996) ................................................12

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006) ................................................22

*Williams v. PMA Cos., Inc.*,
  419 F. Supp. 3d 471 (N.D.N.Y. 2019) ................................................................................4

*Zheng v. Liberty Apparel Co.*,
  355 F.3d 61 (2d Cir. 2003) .............................................................................................25

**Statutes & Other Authorities**

12 NYCRR 146.2.18 .........................................................................................................3, 20

12 NYCRR 146.2.19 ......................................................................................................3, 4, 20

29 U.S.C. § 185 ...........................................................................................................3, 16, 17

C.P.L.R. § 301 ....................................................................................................................22

C.P.L.R. § 302 ....................................................................................................................22

Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*....................................................*passim*

Fed. R. Civ. P. 12 ..............................................................................................................*passim*

Fed. R. Civ. P. 56 ....................................................................................................................19

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*......................................................................*passim*

NYLL § 195...................................................................................................................5, 16, 21

NYLL § 196-d ..................................................................................................................*passim*

NYLL § 198.............................................................................................................................2

Defendants Park Hotels & Resorts Inc. (f/k/a Hilton Worldwide, Inc.) ("Park"), Hilton Worldwide Holdings Inc. ("HWH")[1], HLT NY Waldorf LLC ("HLT"), Hilton Domestic Operating Company Inc. ("Hilton Domestic"), and Waldorf=Astoria Management LLC ("WAM") (together, the "Defendants") respectfully submit this memorandum of law in support of their motion (the "Motion") to dismiss the First Amended Complaint (ECF No. 13; the "FAC" or "Compl.") of Plaintiff Michael Morana ("Plaintiff" or "Morana"), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), or in the alternative, to compel Plaintiff's claims to individual arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*[2]

## PRELIMINARY STATEMENT

Plaintiff, a former New York Waldorf Astoria (the "Waldorf Astoria") banquet services employee and member of the New York Hotel and Motel Trades Counsel, AFL-CIO (the "Union"), brings this action for purported violations of the New York Labor Law ("NYLL") on behalf of himself and a putative class of allegedly similarly-situated employees (the "Putative Class"). Each of Plaintiff's claims is based on his allegation that the Banquet Services Agreement (the "BSA") applicable to banquet service workers at the Waldorf Astoria failed properly to advise banquet services customers of the "split" between administrative and gratuity charges, as required by the NYLL, *i.e.*, the breakdown between fees retained by management versus those paid as gratuities to service staff. (Compl., ¶¶54-66.) He further asserts derivative claims for improper wage notices and statements, and a common law claim for "unjust enrichment." (*Id.*, ¶¶67-83.)

---

[1] The caption of the FAC misstates the proper name of "Park Hotels & Resorts Inc.", as well as, "Hilton Worldwide Holdings Inc." Further, Plaintiff alleges that Defendant Park is doing business as Hilton Worldwide Holdings Inc. This is not correct.

[2] True and correct copies of exhibits ("Ex. [_]") submitted in support of Defendants' Motion are annexed to the Declaration of Joseph A. Piesco, Jr., dated July 13, 2020 ("Piesco Decl.").

First, Plaintiff alleges subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.* ("CAFA"), but CAFA jurisdiction does not exist here. This is because the aggregate number of Putative Class members fails to meet CAFA's required 100-person minimum threshold. As set forth in the Declaration of Owen Wilcox, during the relevant statutory period[3] (*i.e.*, April 2014 until March 2017, when the Waldorf Astoria closed for renovations), the Waldorf Astoria employed no more than 162 banquet services employees. However, following its closure in March 2017, 96 employees agreed to severance packages that included general releases of claims. As a result, the number of potential Putative Class members is 66, far below CAFA's required threshold.

During the parties' meet and confer process, Plaintiff's counsel argued the class definition includes (i) every hotel owned by Defendants in New York, and (ii) every "tipped" employee, regardless of whether he or she was a banquet services employee subject to the same BSA as Plaintiff. This position has no ostensible merit because: (i) Plaintiff never worked in any other "tipped" position, either at the Waldorf Astoria or elsewhere; (ii) Plaintiff's only alleged "injury-in-fact" is premised on the BSA, and the BSA had no applicability to any other "tipped" position (at that hotel or elsewhere); (iii) ***even if*** Plaintiff were similarly-situated to every other "tipped" employee at every hotel owned or operated by Defendants in New York (and he clearly is not), he alleges no basis besides the BSA for allegedly improper gratuity "splits"; and (iv) Plaintiff's Union negotiated the terms of the BSA, which are unique to banquet services at the Waldorf Astoria, and specifically encompassed within the Union's Collective Bargaining Agreement ("CBA"), to which Plaintiff was a party. Accordingly, Plaintiff cannot plausibly demonstrate that the Putative Class extends beyond the Waldorf Astoria's banquet services staff.

---

[3] The statute of limitations under the NYLL is six years. NYLL § 198(3).

Additionally, Plaintiff's claims should be dismissed because he is subject to not one, but two, arbitration agreements, each of which requires arbitration on an individual basis under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). ***First***, in January 2018, when Plaintiff became a banquet server at the New York Hilton, Plaintiff agreed to individually arbitrate his claims by executing a broad arbitration agreement, covering all common law and statutory claims for unpaid wages, without temporal limitation. ***Second***, arbitration is required because Plaintiff's claims indisputably arise from, and are inextricably intertwined with, the CBA, and his Union specifically negotiated the banquet servers' gratuities; as such, Plaintiff's claims fall within the scope of the CBA's mandatory arbitration provision, which, critically, expressly reserves the threshold question of arbitrability for an arbitrator. ***Third***, these claims are entirely contractual in nature and, thus, preempted by Section 301, 29 U.S.C. § 185, of the Labor Management Relations Act (the "LMRA").

Beyond this, even if jurisdiction exists (it does not), the FAC should be dismissed for failure to state claim under Fed. R. Civ. P. 12(b)(6). Under the NYLL and its attendant regulations, an employer may not retain any portion of a mandatory service charge unless a reasonable customer could discern that such charge (or portion thereof) was not a "tip" to be provided to employees. *See* NYLL § 196-d; *see also* 12 NYCRR 146.2.18-19. An employer can satisfy this requirement by, *inter alia*, breaking down, in writing, that percentage or portion of the charge that is a gratuity to be distributed to employees, and that which is to be retained by the employer. *See*

12 NYCRR 146.2.19.  As set forth below, the BSA – which  is incorporated by reference in the FAC[4] – indisputably complies with these requirements of NYLL § 196-d as a matter of law.[5]

Likewise, Plaintiff's "unjust enrichment" claim fails for the simple fact that the CBA – to which Plaintiff is a party – specifically sets forth the amount of gratuities to which Plaintiff was entitled.  An unjust enrichment claim fails as a matter of law where, like here, an express contract exists between the parties that specifically denotes the consideration paid for the services provided.

Finally, if this matter is not dismissed in its entirety or compelled to arbitration, Defendants HWH and HLT should be dismissed.  First, personal jurisdiction over HWH does not exist as it is (i) a publicly traded Delaware corporation (NYSE: HLT), with its principal place of business in Virginia; and (ii) it has no employees and does not now, nor has it ever, conducted any business in New York.  Second, neither HWH nor HLT was Plaintiff's "employer," and Plaintiff fails to allege any facts which possibly could support a "joint employer" claim regarding these entities.

For the reasons above and those set forth below, Defendants respectfully request that this Court dismiss the FAC in its entirety, or alternatively, compel the action to arbitration pursuant to the FAA.

## STATEMENT OF RELEVANT FACTS

### I.    BACKGROUND

Plaintiff purports to represent "[a]ll current and former hourly, non-exempt employees, including but not limited to servers, food servers, beverage servers, banquet servers, or other employees with similar job duties employed by Defendants in New York," and "challenge[s] Defendants' "policies and practices of: (1) failing to remit all service fee surcharges to Plaintiff

---

[4] While not referencing the BSA itself, the FAC incorporates it by reference by expressly referring to its section outlining the "gratuity and administrative charge" on eight separate occasions (*see* Compl. ¶¶1-2, 25, 27, 47, 58, 61). *See Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 482 (N.D.N.Y. 2019) (court may consider documents referred to in the complaint in connection with a 12(b)(6) motion without converting to summary judgment motion).

and Class members; (2) unjust enrichment for failure to remit the entirety of the service fee surcharges to non-managerial service workers," and (3) failing to provide Plaintiff and the Putative Class wage notices and statements required under the NYLL.  (*See* Compl., ¶3.)

Despite the breadth of Plaintiff's conclusory allegations, a cursory review of the FAC demonstrates that Plaintiff's claims entirely are based on the BSA's "gratuity and administrative charge" (*see* Compl., ¶¶1-2, 25, 27, 47, 58, 61; *see also* Piesco Decl., Ex. A), which he alleges was structured "to confuse customers, such that a reasonable customer [was] unable to discern how much of the total portion of the surcharge will be remitted to non-exempt service workers and managerial non-service workers" (Compl., ¶25).  Plaintiff's "unjust enrichment" and NYLL §§ 195(1), (3) claims are wholly derivative of his claim that the BSA did not comply with the NYLL. (*See id.*,  ¶¶3, 54-83.)  Notably, there is not *one* allegation identifying any supposed unlawful "policy" or "practice" relating to any employees other than banquet servers at the Waldorf Astoria.

## II.   PLAINTIFF'S EMPLOYMENT AT THE WALDORF ASTORIA

Plaintiff was employed as a banquet services employee at the Waldorf Astoria from 1999 until his separation in March 2017, when the Waldorf Astoria closed for renovations.  (*See id.*,  ¶7; *see also* Wilcox Decl., ¶6.)  Throughout, Plaintiff was represented by the Union and employed pursuant to the terms and conditions set forth in the CBA.[6]  (*See* Piesco Decl., Ex. B.)  During his employment, Plaintiff's (and the Putative Class's) employer changed due to certain corporate transactions.  (*See* Wilcox Decl., ¶¶7-8.)  Plaintiff was employed by Park until September 15, 2016; by Hilton Domestic until January 1, 2017; and finally by WAM until his separation in March 2017, when the Waldorf Astoria closed and all banquet services employees, including Plaintiff, were terminated.  (*See id.*, ¶¶7-8, 10.)

---

[6] The CBA was in effect from July 1, 2012, to June 30, 2019.

## III.     THERE ARE ONLY 66 MEMBERS OF THE PUTATIVE CLASS

Upon termination, all banquet services employees, including Plaintiff, were offered severance in exchange for executing a general release (the "Release Agreement")[7].  (*See* Wilcox Decl., ¶10; *see also* Piesco Decl., Exs. C-1 to C-3.)  The Release Agreement contains a broadly worded release of all claims, including all statutory and common law claims.  (*See* Wilcox Decl., ¶10; *see also* Piesco Decl., Exs. C-1 to C-3.)  According to WAM's business records, 96 of 162 of the banquet services employees executed the Release Agreement, leaving a total of 66 possible members of the Putative Class.  (*See* Wilcox Decl., ¶¶10-11.)

During counsels' meet and confer process, Plaintiff's counsel argued the class definition includes (i) every hotel owned by Defendants in New York, and (ii) every tipped employee, past or present, who worked at such hotels.  But it is indisputable that (i) Plaintiff never worked in any other "tipped" position, either at the Waldorf Astoria or any other hotel Defendants owned, managed and/or operated in New York; (ii) the only alleged injury Plaintiff personally suffered stems from the Union-negotiated BSA that governed his (and the Putative Class's) gratuities at the Waldorf Astoria; and (iii) the BSA was unique to banquets services employees at the Waldorf Astoria, and specifically encompassed within the CBA.

## IV.     PLAINTIFF'S CLAIMS ARISE FROM THE CBA AND THE BSA

Plaintiff's claims arise from and are governed by the CBA and the Waldorf Astoria's BSA, which was drafted based on the CBA and negotiated by the Union.  Both documents expressly address how gratuities are to be paid to banquet services employees.  Specifically, Article 47 of the CBA, entitled "Banquet Department" (sub-part entitled "Gratuities") lays out the percentages to be distributed as gratuities to the banquet servers.  (*See* Piesco Decl., Ex. B, pp. 39-40 ["[W]ith

---

[7] Depending on when the individual was separated, he or she was presented with one of three voluntary separation agreements that contained identical general release language.  (*See* Piesco Decl., Exs. C-1 to C-3.)

respect to banquet functions, a minimum gratuity equal to fifteen percent (15%) shall be paid to tip category employees (banquet servers and captains) working said functions . . . ."].)

Likewise, the BSA's "Gratuity & Administrative Charge" section is clear and unambiguous regarding which portions of the service charge will be distributed as gratuities versus administrative service retained by management.  (*See* Piesco Decl., Ex. A.)  It reads:

> The combined gratuity and administrative charge that is in effect on the day of your Event will be added to your bill.  Currently, the combined gratuity and administrative charge is equal to 23.75% of the food and beverage, sundry and room rental total, plus applicable state and local tax.  ***A portion of this charge will be a gratuity as calculated by the following formula and fully distributed to servers, and where applicable, captains and/or bartenders assigned to the Event***:
>
> - For [special] functions: The gratuity will be the greater of: (i) 16.9% of Food & Room Rental and 18.4% of the Beverage total, or (ii) 15% of 96.3% of the combined Food & Beverage, Room Rental, Audio Visual Commission & other charges ***which are required by our Union contract to be subject to the combined gratuity.***
>
> - All other . . . Functions:  The gratuity will be the greater of (i) 15.9% of the Food and Room Rental total and 17.9% of that amount in Beverage served for events inside the function room or 15% of 96.3% of the combined Food & Beverage, Room Rental, Audio Visual commission and other charges ***which are required by our Union contract to be subject to the combined gratuity.***
>
> ***For all functions, the remainder of the combined gratuity and administrative charge (currently 23.75%) will be an administrative charge.  This administrative charge is not a gratuity and is the property of the Hotel*** to cover discretionary costs of the Event of any increases to the combined gratuity and administrative charge should different gratuities be in effect on the day of the Event pursuant to the applicable collective bargaining agreement.

(*Id.* [emphasis added].)

## V.   THE CBA'S MANDATORY GRIEVANCE AND ARBITRATION PROCEDURES APPLY TO DISPUTES CONCERNING GRATUITIES

The CBA requires the parties to follow a mandatory grievance and arbitration procedure regarding any and all disputes.  (*See* Piesco Decl., Ex. B, pp. 20-21.)  Article 26 of the CBA, entitled "Complaints, Grievances and Arbitration" (the "Arbitration Article"), mandates that "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly" shall be subject to its procedures.  (*Id.* at p. 20.)  Further, it provides, "[*a*]*ny questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the [arbitrator's] jurisdiction, or authority, shall be submitted to the [arbitrator] in accordance with this Article.*"  (*Id.*) (emphasis added).

The parties' past practice and course of dealing reflects that the CBA's Arbitration Article broadly covers disputes between Union members and the Waldorf Astoria regarding the terms and conditions of the banquet services employees' employment, ***including grievances over gratuities***.  (*See* Piesco Decl., Exs. D, E, F.)  Moreover, several disputes resolved through the grievance and arbitration procedures specifically addressed the percentages of revenue allocated to the banquet services employees versus management, the central issue alleged in the FAC.  (*See id.*, Exs. D, E.)

## VI.   PLAINTIFF CONTINUES HIS EMPLOYMENT AT THE NEW YORK HILTON AND EXECUTES AN ARBITRATION AGREEMENT

In January 2018, Plaintiff was hired as a banquet server at the New York Hilton, a hotel in New York managed, directly and/or indirectly, by HWH and Hilton Domestic.  (*See* Wilcox Decl., ¶¶13-14.)  During his on-boarding, Plaintiff executed the Agreement re At-Will Employment and Arbitration (the "Individual Arbitration Agreement"), which has no temporal limits and provides, in relevant part:

> The Company and I further agree and acknowledge that final and binding arbitration shall be the exclusive forum to hear and decide any dispute between the Company and me, except for claims for Workers' Compensation, Unemployment Compensation, claims brought to secure rights granted under the terms of a collective bargaining agreement, or any other claim that is non-arbitrable under applicable state or federal law . . . Arbitration under this Agreement shall be before a single arbitrator in the county in which the dispute arose and will be conducted in accordance with the Federal Arbitration Act…Except for the claims carved out above, this Agreement includes all common-law and statutory claims, including, but not limited to, any claim for breach of contract, unpaid wages . . . .

(*See id.*, ¶15; *see also* Piesco Decl., Ex. G.)

While the Individual Arbitration Agreement does not define "the Company", there is no question Plaintiff signed this agreement (*see* Wilcox Decl., ¶16), or that the "Company" includes Plaintiff's direct employer at the time, Hotels Statler Company, Inc.[8] and its direct and indirect parents and affiliated entities. Notably, Plaintiff claims (wrongly) all Defendants are "joint employers" (*see, e.g.*, Compl. ¶21 [Defendants "jointly, directly or indirectly, control the employment terms, pay practices, and daily work of Plaintiff and similarly situated employees"]); thus, Plaintiff cannot possibly argue Defendants are not encompassed within the "Company".

## LEGAL ARGUMENT

### I.    SUBJECT-MATTER JURISDICTION UNDER CAFA DOES NOT EXIST

The only alleged basis for subject matter jurisdiction is CAFA. CAFA jurisdiction does not exist here, however, because (i) Plaintiff only has standing (if at all) to assert claims on behalf of banquet services employees at the Waldorf Astoria who received gratuities based on the BSA, and not every "tipped" employee at every hotel owned or managed by Defendants; and (ii) there indisputably are less than 100 members of the Putative Class. *See Smith v. Manhattan Club*

---

[8] As of January 1, 2020, the Plaintiff's direct employer became Hotels Statler Employer LLC.

*Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 249 (S.D.N.Y. 2013) (citing *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013); 28 U.S.C. §§ 1332(d)(2)-(6)).).

A district court should dismiss an action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when it lacks the statutory or constitutional power to adjudicate it. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015). The plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence. *Barry v. Curtin*, 993 F. Supp. 2d 347, 351 (E.D.N.Y. 2014) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 171 (2d Cir. 2005)).

### A.   Plaintiff's Article III Standing is Limited to Waldorf Astoria Banquet Services Employees

To establish Article III standing, a plaintiff must demonstrate: (1) he has suffered an injury-in-fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 180-81 (2000).  The burden rests on the party asserting jurisdiction to clearly allege facts demonstrating standing.  *See Ross v. Bank of America*, 524 F.3d 217, 222 (2d Cir. 2008).

Although Plaintiff's claims are based exclusively on the Waldorf Astoria's BSA (and the CBA), he purports to bring this case as a class action on behalf of "[a]ll current and former hourly, non-exempt employees, including but not limited to servers, food servers, beverage servers, banquet servers, or other employees with similar job duties employed by Defendants in New York . . . ." (Compl. ¶44.)  Plaintiff contends, in conclusory fashion, and without any factual basis, that Defendants impose the ***same (entirely undefined)*** policies, procedures and practices for gratuities

and service charges on **all** such employees, employed at **every** New York hotel, restaurant or other establishment owned or managed by Defendants.

Putting aside these boilerplate allegations (which are entirely untrue, and of which Plaintiff has no personal knowledge), and the sheer lack of **any** factual allegations regarding these purported "policies" or "practices" – including what they are and how they possibly violate the NYLL – Plaintiff does not have Article III standing to sue on behalf of **all** "tipped" employees at **all** locations owned or operated by Defendants for the simple reason that he never worked in any "tipped" position other than as a banquet services employee. The only alleged "injury" Plaintiff possibly suffered is based on the BSA (*see, e.g.*, Compl. ¶25). *See Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 174 (S.D.N.Y. 2006) (a blind person would not have standing to bring a disability lawsuit on behalf of a deaf person because "[t]he injury-in-fact requirement of Article III does not allow for such broad notions of standing. Plaintiffs only have standing to sue for actual injuries.") (citing *Lewis v. Casey*, 518 U.S. at 358, 358 n. 6, (1996)). Moreover, the BSA – including its Gratuities and Administrative Charge Section, which is based on the CBA and incorporates same – was specifically negotiated by Plaintiff's Union, is unique to the Waldorf Astoria and, along with the CBA, governed the employment of the banquet services employees at the Waldorf Astoria only. Plaintiff cannot possibly have standing to represent all tipped employees at the Waldorf Astoria hotel – e.g., a room service waiter not subject to the BSA – let alone all tipped employees at each of the 10 hotels in New York owned and/or managed by Defendants. (*See* Wilcox Decl., at ¶5.)

B.    **There are Less Than 100 Members in the Putative Class**

CAFA jurisdiction does not exist when the proposed class consists of less than 100 members. 28 U.S.C. § 1332(d)(5); *see Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct.

736, 739 (2014) (remanding where the suit did not assert claims for monetary relief of 100 or more persons); *In re Kingate Mgmt. Ltd. Litig.*, 2011 WL 1362106, at *9 (S.D.N.Y. Mar. 30, 2011).

Since the Waldorf Astoria closed in March 2017, 96 out of 162 banquet services employees executed the Release Agreement.  (*See* Wilcox Decl., ¶¶10-11; *see also* Piesco Decl., Exs. C-1 to C-3.)  Thus, the FAC should be dismissed because the number of members of the Putative Class who Plaintiff possibly has standing to represent is 66, way less than the 100 required by CAFA.

## II.   ALTERNATIVELY, THE ACTION SHOULD BE COMPELLED TO ARBITRATION

### A.   Federal Policy Strongly Favors the Enforcement of Arbitration Agreements

The FAA mandates arbitration where there is an agreement to arbitrate in a transaction involving interstate commerce.  *See* 9 U.S.C. § 2 (2014); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006).

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, "[w]here the contract contains an arbitration clause, there is a presumption of arbitrability," *Kowalewski v. Samandarov*, 590 F.Supp.2d 477, 491 (S.D.N.Y. 2008) (citations omitted), as the FAA embodies a "liberal federal policy favoring arbitration agreements."  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).  Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."  *Moses H. Cone*, 460 U.S. at 24-25.  Arbitration "must be preferred unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Thomas James Assocs. v. Jameson*, 102 F.3d 60, 65 (2d Cir.

1996) (citations omitted).  In addition, Section 4 of the FAA specifically contemplates that a party may obtain an order "directing that [an] arbitration proceed in the manner provided for in [an arbitration] agreement," and section 3 of the FAA provides for a stay of legal proceedings when the court is satisfied that the issue is arbitrable under an arbitration agreement.  9 U.S.C. §§ 3-4.

**B.   Arbitration Properly Should be Compelled**

Assuming CAFA jurisdiction exists (which it does not), Section 4 of the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  In reviewing a motion to compel arbitration, courts must determine: "(1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; and, (3) "if federal statutory claims are asserted . . . whether Congress intended those claims to be nonarbitrable." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 1117 (2020).  Here, the parties agreed to arbitrate any disputes among them pursuant to not one, but *two* arbitration agreements.

1.   Plaintiff's Claims are Subject to the Individual Arbitration Agreement

On January 18, 2018, Plaintiff entered into and signed the Individual Arbitration Agreement, agreeing to arbitrate "any dispute between the Company and [him] . . . in accordance with the Federal Arbitration Act . . . includ[ing] all common-law and statutory claims, including, but not limited to, any claims for . . . unpaid wages."  (*See* Piesco Decl., Ex. G.)  Although the Individual Arbitration Agreement does not define "the Company," there is no question Plaintiff executed this document as part of his on-boarding  at the New York Hilton (*see* Wilcox Decl., ¶16), and that he agreed to arbitrate any claims he may have against his employers, Hotels Statler Company LLC, and his successor employer Hotel Statler Employer LLC, both wholly-owned subsidiaries of Defendants HWH and Hilton Domestic.  Critically, the FAC claims Defendants

"jointly, own, operate, and/or manage hotels, restaurants, and resorts throughout New York and United States."  (Compl. ¶20.)  Given this "joint employer" claim there can be no vagary as to who the "Company" is – it is, as he alleges, "all Defendants."[9]

Plaintiff also is required to arbitrate his claims because the parties "have a sufficient relationship to each other and to the rights created under the agreement."  *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126-28 (2d Cir. 2010) (non-signatory could compel arbitration based on equitable estoppel); *see also Cartagena Enters., Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992, at *4-*5 (S.D.N.Y. Oct. 16, 2013) (plaintiff was estopped from avoiding arbitration with non-signatory because claims against signatory and non-signatory were intertwined and due to the parties' close relationship).

Lastly, because the Individual Arbitration Agreement does not contain temporal limitations, it is required to be applied retroactively to Plaintiff's claims.  *See Schapp v. Mastec Servs. Co.*, 2014 WL 1311937, at *3 (N.D.N.Y. Mar. 31, 2014) ("[T]he Second Circuit has held that, in the absence of language explicitly limiting an otherwise broad arbitration agreement to post-agreement disputes, the agreement should be deemed retroactive."); *see also Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972) (applying arbitration clause retroactively).

### 2.    The CBA's Arbitration Article Requires Plaintiff to Arbitrate His Claims.

The strong federal policy favoring arbitration is even stronger in the labor context.  In its *Steelworkers Trilogy*, the Supreme Court made clear that arbitration is the preferred method of resolving labor disputes, holding where an arbitration provision exists, the court's role is limited to determining if a claim is governed by the CBA, resolving all doubts in favor of arbitration.  *See*

---

[9] Plaintiff "cannot avoid arbitration for which [he] had contracted simply by adding a nonsignatory [parties], lest the efficacy of contracts and the federal policy favoring arbitration be defeated."  *See Danisco A/S v. Novo Nordisk A/S*, 2003 WL 282391, at *4 (S.D.N.Y. Feb. 10, 2003).

*Steelworkers v. Ent. Wheel & Car Corp.*, 363 U.S. 593 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).

At all relevant times, Plaintiff was party to, and his employment was governed by, the CBA, which contains a broad mandatory arbitration provision that has historically been used to resolve wage and hour disputes, including those involving gratuities.  Plaintiff's claims properly should be compelled to arbitration under the CBA's Arbitration Article because: (1) it expressly reserves the question of arbitrability for an arbitrator; and (2) Plaintiff's claims plainly arise from, are dependent on, and are inextricably intertwined with, the CBA and the Union-negotiated BSA.

a.   *The Threshold Question of Arbitrability*
*Is Reserved for the Arbitrator*

At minimum, the threshold question of arbitrability under the CBA is for an arbitrator to decide.  The CBA provides in no uncertain terms "[a]ny questions regarding arbitrability, substantive, procedural, or otherwise or regarding the [arbitrator's] jurisdiction, or authority, shall be submitted to the [arbitrator] in accordance with this Article."  (Piesco Decl., Ex. B, p. 20.)

Governing precedent – including the Supreme Court's recent decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) – makes clear that arbitration must be compelled if the arbitration provision delegates authority to determine the scope of arbitrability to an arbitrator.  "When the parties' contract delegates the arbitrability question to an arbitrator, a court **may not** override the contract.  In those circumstances, ***a court possesses no power to decide the arbitrability issue***."  *Id.* at 529 (emphasis added); *see also Hidalgo v. Amateur Athletic Union of U.S., Inc.,* 2020 WL 3442029, at *9 (S.D.N.Y. June 24, 2020) (a court cannot decide arbitrability if the parties agreed to "empower an arbitrator to decide issues of arbitrability"); *Chung Chang v. Warner Bros. Entm't*, 2019 WL 5304144, at *5 (S.D.N.Y. Oct. 21, 2019) ("The Court must honor the terms of the agreement and shall not address [the arbitrability question], as that question is

reserved for the arbitrator."). This is the case even if the court believes the underlying claims are not arbitrable. *See Henry Schein*, 139 S. Ct. at 529.

b.    Plaintiff's Claims Are Inextricably Intertwined
<u>with the CBA and Preempted by the LMRA</u>

Even assuming, *arguendo*, the issue of arbitrability was not reserved for an arbitrator (and it is), Plaintiff's claims are contractual in nature, and arise from and require the application and interpretation of the CBA. Therefore, Plaintiff's claims are preempted by the LMRA.

Section 301 of the LMRA "preempts state law claims that involve interpretation of an underlying CBA." *Eka v. Brookdale Hosp. Med. Ctr.*, 2016 WL 11263669, at *5-6 (E.D.N.Y. Sept. 2, 2016), *adopted*, 2016 WL 6143343 (E.D.N.Y. Sept. 30, 2016). To determine if a claim is preempted by Section 301, courts generally utilize a two-part analysis. "First, a court must analyze the 'legal character' of the claim and whether it is truly independent of rights under the collective bargaining agreement." *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596-97 (E.D.N.Y. 2007) (citations omitted). "Second, even if the right exists independently of the CBA, the court must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Id.* (citations and internal quotations omitted). If a claim satisfies *either* prong, it is preempted. *See id.*

Here, Plaintiff's claims arise from, and are dependent on, the CBA and the Union-negotiated BSA. *Levy*, 498 F. Supp. 2d at 596-97. To be clear, Plaintiff's ***own Union negotiated the precise amount of gratuities he and every other banquet services employee was entitled to receive in connection with their employment***. All of Plaintiff's claims – *i.e.*, the alleged violations of NYLL §§ 195(1), (3), 196-d, and "unjust enrichment" claim – find their genesis in the allegation that Defendants structured the "gratuity and administrative charge" in such a way that a reasonable

16

customer could not discern which portion was a "tip" meant for banquet services employees, and which was an administrative charge.  (*See* Compl., ¶¶31-32.)

A review of the CBA and the BSA, which incorporates the CBA, demonstrates that Plaintiff's claims cannot be resolved without performing substantial analysis of their terms, which not only explicitly address gratuities (*see* Piesco Decl., Ex. B, pp. 39-40 ["with respect to banquet functions, a minimum gratuity equal to fifteen percent (15%) shall be paid to tip category employees (banquet servers and captains) working said functions"]), but also the "gratuity and administrative charge" referenced in the FAC (*see* Piesco Decl., Ex. A ["Gratuity & Administrative Charge: . . . A portion of this charge will be a gratuity . . . fully distributed to servers . . . the remainder . . . will be an administrative charge . . . [which] is not a gratuity and is the property of the Hotel"]).[10]   Accordingly, Plaintiff's claims arise from and require substantial interpretation and analysis of the CBA, the BSA and the parties' historical course dealings, and properly are preempted by the LMRA.  *See Johnson v. D.M. Rothman Co.,* 861 F. Supp. 2d 326, 332-33 (S.D.N.Y. 2012) (holding that Section 301 preempted plaintiffs' NYLL claims).

Given this background, Plaintiff's claims easily fall within the broad scope of the CBA's Arbitration Article, which covers "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly" (Piesco Decl., Ex. B, p. 20).  *See Freeman v. River Manor Corp.*, 2019 WL 1177717, at *10 (E.D.N.Y. Mar. 13, 2019), *mod. on recon.*, 2019 WL 3578432 (E.D.N.Y. Aug. 5, 2019) (after finding NYLL claims

---

[10] Likewise, Plaintiff's "unjust enrichment" claim is preempted because it cannot be resolved without in-depth analysis of the CBA, the BSA, and the parties' course of dealings.  *See Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 544 (S.D.N.Y. 2018) ("Where . . . a plaintiffs quasi-contract claim hinge[s] on rights created by the CBA that claim is preempted by the LMRA") (citations and internal quotations omitted); *Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 161 (E.D.N.Y. 2013) (dismissing claims for unjust enrichment as preempted by the LMRA).

preempted, holding they "must be resolved in accordance with the CBA's grievance and arbitration procedures"). Indeed, the parties routinely have relied on the Arbitration Article and its mandatory arbitration provision to resolve "complaints, disputes or grievances" about similar wage and hours matters, including: (i) claims involving the percentages of revenue allocated to the banquet services employees versus management (*see* Piesco Decl., Exs. D, E); and (ii) disputes regarding the gratuity allocation to different service staff employees (*see id.*, Ex. F).

C.   **Arbitration Must Be on an Individual Basis**

The Supreme Court recently made clear that class arbitration can only be compelled when an arbitration agreement between the parties "expressly" contemplates class arbitration. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019); *see also Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") (emphasis in original); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (enforcing class action waiver in arbitration agreement); *see also Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1619 (2018) ("In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 299 (2d Cir. 2013) (compelling arbitration on an individual basis). There is nothing in either arbitration agreement concerning class arbitration. Therefore, the Court should require Plaintiff to comply with his contractual obligation to arbitrate his claims on an individual basis only.

III.   **PLAINTIFF'S FAC FAILS TO STATE A CLAIM**

Plaintiff's claims are based on an allegation that the Waldorf Astoria's BSA misled or confused customers about the breakdown in services fees between administrative fees and gratuities paid to service staff. (*See* Compl. ¶¶3-4, 25, 54-66.) The FAC fails to include any

allegations that any customers actually were misled or confused, nor does it even recite *any* language from the BSA at all.  Undoubtedly, this is because the BSA delineates the Gratuity & Administrative Charge "split" *precisely* as required by the NYLL § 196-d.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is proper where a complaint fails to "state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a viable claim.  *Ashcroft*, 556 U.S. at 678.  Thus, a complaint must contain more than "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (*quoting Twombly*, 550 U.S. at 557).  Likewise, allegations which are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss, *Twombly*, 550 U.S. at 555, as they are "not entitled to the assumption of truth" that may otherwise apply on a motions to dismiss.  *Iqbal*, 556 U.S. at 679.

Evidence outside of the FAC may be considered on a motion to dismiss where such is integral to the complaint, and should not be disregarded "simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference."  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).  In such instances, "a Rule 12(b)(6) motion need not be transformed into one under Rule 56 . . . ."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citation omitted).

A.   **Plaintiff Fails to State a Claim Under the New York Labor Law or for Unjust Enrichment**

NYLL § 196-d prohibits employers from retaining, directly or indirectly, any part of an employee's gratuity, or any charge purported to be a gratuity.  The law applies to "mandatory

19

charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees*." Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (N.Y. Ct. Aps. 2008). "The standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer." *Id.*

There is a "rebuttable presumption that any charge in addition to charges for food, beverage . . . and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity." 12 NYCRR 146.2.18(b). An employer may rebut this presumption by showing "that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity." 12 NYCRR 146.2.19(b). To meet this burden, the employer must include in the contract with the customer that the administrative charge is (i) for the administration of the banquet; (ii) that it is not purported to be a gratuity; and (iii) it will not be distributed as gratuities to service employees. 12 NYCRR 146.2.19(c); *see also Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 391 (S.D.N.Y. 2013).

When providing a "combination charge" – like the Gratuities and Administrative Charge in the BSA – with a part going to the employee as a gratuity and a part to management – such must be "broken down into specific percentages or portions, in writing to the customer." 12 NYCRR 146.2.19(d). The New York Department of Labor (the "NYDOL") issued the following "illustrative but non-exhaustive" list of factors that address whether a reasonable customer would believe a particular service charge to be a gratuity, including, *inter alia*, font size and prominence of the notice, whether the label used to denote the charge would confuse patrons (noting that the label "administrative fee" is clearer than "service charge"), and whether the notice discloses the

portion of the charge that is being distributed to the service staff.  *Maldonado*, 990 F. Supp. 2d at 390 (citing NYDOL, Opinion Letter (Mar. 11, 2010)).

Here, the Gratuities and Administrative Charge section of the BSA could not be more clear. It lays out, with specific percentages, the amount of the charge that will be a gratuity "fully distributed to servers and where applicable, captains and/or bartenders assigned to the Event." (Piesco Decl., Ex. A.)  It explains that the remainder of the charge "will be an administrative charge.  This administrative charge is not a gratuity and is the property of the Hotel."  (*Id.*)  The notice section is in normal-sized, bold, italicized text, filling nearly half a page – it cannot be missed.  (*See id.*)  No reasonable customer could be confused or misled by the Gratuities and Administrative Charge section of the BSA.[11]

Similarly, Plaintiff's unjust enrichment claim fails as a matter of law.  It is well-settled that "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."  *IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132, 142 (N.Y. Ct. Aps. 2009).  Plaintiff's gratuities claims stem from a contractual agreement, *i.e.*, the CBA (and the BSA, which was negotiated by his Union); thus, his claim for unjust enrichment must be dismissed.  *See, e.g.*, *Rabin v. Mony Life Ins. Co.*, 387 F. App'x 36, 42 (2d Cir. 2010).

## IV.   DEFENDANTS HWH AND HLT SHOULD BE DISMISSED

### A.   The Court Lacks Jurisdiction Over HWH

Plaintiff bears the burden of establishing this Court has personal jurisdiction here.  *Licciex rel. Licci v. Lebanese Canadian Bank,* SAL, 673 F.3d 50, 59 (2d Cir. 2012).  "To survive a motion

---

[11] Since Plaintiff's primary NYLL § 196-d claims fails, his derivative recordkeeping claims under NYLL §§ 195(1) & (3) and his common law claim for unjust enrichment also necessarily fail as a matter of law.  *See Kone v. Joy Constr. Corp.*, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016).

to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists" by demonstrating (i) "a statutory basis for personal jurisdiction over the defendant," and (ii) "that exercise of jurisdiction . . . is in accordance with constitutional due process principles." *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015) (citing *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)); *Licci*, 673 F.3d at 59-60.

Personal jurisdiction is determined by the law of the state in which the district is located. *See Ashcroft*, 470 F.3d at 495. Under New York law, a plaintiff must show either that the defendant "was present and doing business in New York within the meaning of C.P.L.R. § 301," known as general jurisdiction, "or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302," known as specific jurisdiction. *Stroud*, F. Supp. 3d at 385 (quoting *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014); *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)). General jurisdiction permits a court to hear all claims against an entity. *Id.* Specific jurisdiction permits a court to hear only those issues that arise out of or relate to the entity's contacts with the forum.[12] *Id.*

### 1.   The Court Lacks General Jurisdiction Over HWH

A state's exercise of general personal jurisdiction over a corporate entity is unconstitutional unless "that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum." *Chufen Chen v. Dunkin' Brands*, 954 F.3d 492, 498 (2d Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). The fact that a foreign corporation is affiliated with entities in New York is insufficient to establish general jurisdiction. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (foreign

---

[12] In addition, courts must ensure the exercise of jurisdiction is consistent with constitutional due process, which requires, *inter alia*, "minimum contacts" with the forum state. *Licci*, 673 F.3d at 60 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

corporation with New York affiliates was not "at home" in New York). Plainly, HWH is not "at home" in New York. HWH is a Delaware publicly traded holding corporation (NYSE: HLT), and its principal place of business is in Virginia. (*See* Wilcox Decl. ¶9.) It does not have ***any*** employees, and it never has conducted business in New York.[13] (*See id.*)

  2. The Court Lacks Specific Jurisdiction Over HWH

Specific jurisdiction may be exercised where a defendant (i) "transacts any business" in New York, and (ii) the cause of action "arises from" such transaction. *Licci,* 673 F.3d at 60 (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). To show that a defendant "transacts business" in New York, a plaintiff must demonstrate the defendant "purposely availed itself of the privilege of conducting activities within New York" *Stroud*, 91 F. Supp. 3d at 389 (citing *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir. 2006)).

In determining whether specific jurisdictions exists, courts consider four non-dispositive factors: (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with the parties to the contract; (iii) what choice of law clause exists; and (iv) whether the contract requires notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. *See Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014).

Specific jurisdiction over HWH does not exist here. Importantly, Plaintiff does not allege any facts to support a claim that HWH "transacted business" in New York. In fact, he merely

---

[13] That HWH had subsidiaries, direct or indirect, in New York is irrelevant because subsidiaries are presumed to be separate entities incapable of conferring personal jurisdiction over their parent corporations, absent clear evidence of control (not even alleged here). *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 342 F. Supp. 2d 207, 214–15 (S.D.N.Y. 2004).

alleges in conclusory fashion that all Defendants are a "joint employer." (Compl. ¶21.) But, HWH is nothing more than a publicly traded holding company (NYSE: HLT); it does not transact *any* business in New York (*see* Wilcox Decl., ¶9). *See Commc'n Partners Worldwide, Inc. v. Main St. Res.*, 2005 WL 1765712, at *4 (S.D.N.Y. July 26, 2005) ("the business transacted by the foreign defendant in New York must 'bear a substantial relationship to the transaction out of which the instant cause of action arises'") (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)).

### B.   Neither Entity is a Joint Employer

Plaintiff purports that all Defendants are his "joint employers," but alleges no facts whatsoever to support this claim, instead relying on conclusory allegations that are woefully deficient to survive a motion to dismiss. (*See* Compl, ¶¶20-21.) Under the NYLL, each Defendant must be an "employer" to be liable. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Joint employment depends on the level of control exercised by the nominal employer over the employees at issue.[14] *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 4834428, at *1 (S.D.N.Y. Aug. 26, 2013).

The Second Circuit has developed two tests for determining joint employment: the formal "economic reality" test and the "functional control" test. *In re Domino's Pizza Inc.*, 2018 WL 4757944, at *4 (S.D.N.Y. Sept. 30, 2018). The formal "economic reality" test considers if the nominal employer has the power to hire and fire, supervised the employees, set their schedule and pay, and maintained employment records. *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). The "functional control" test considers, *inter alia*, if the employees worked a discrete line job that was part of the nominal employer's production processes; if the nominal employer's premises were used by the joint

---

[14] The NYLL has been interpreted consistently with the FLSA for purposes of determining joint employment. *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 188-89 (S.D.N.Y. 2003).

employees; whether the direct employer could shift its business from one joint employer to another; and related factors. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003). To survive a motion to dismiss, plaintiffs "are required to plead sufficient facts to support a finding that the defendant is an 'employer' based on the economic reality test." *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 471 (S.D.N.Y. 2014).

Plaintiff's conclusory allegations fall well short of satisfying either test. Plaintiff was employed directly by (i) Park, until September 15, 2016; (ii) then by Hilton Domestic, until January 1, 2017; and (iii) finally by WAM, until March 2017. (*See* Wilcox Decl., ¶¶7-8.) The FAC alleges ***no facts*** supporting that HWH or HLT exercised any formal control, or functional control, over Plaintiff. *See In re Michael Stapleton Assocs., Ltd.*, 2018 WL 3962931, at *3 (S.D.N.Y. Aug. 17, 2018) (granting 12(b)(6) motion where plaintiff failed to allege facts addressing formal or functional control factors); *Lopez v. Acme Am. Envtl. Co.*, 2012 WL 6062501, at *5 (S.D.N.Y. Dec. 6, 2012) (same); *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, at *8-10 (S.D.N.Y. Aug. 14, 2013) (same).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1). 12(b)(2) and 12(b)(6), or in the alternative, compel Plaintiff's claims to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

Dated: New York, New York
     July 13, 2020

 

                              **DLA PIPER LLP (US)**

                              By: /s/Joseph A. Piesco, Jr., Esq.
                              Joseph A. Piesco, Jr., Esq.
                              1251 Avenue of the Americas, 27th Floor
                              New York, New York 10020
                              Tel: (212) 335-4500; Fax: (212) 335-4501

                              *Attorneys for Defendants*