## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHAEL MORANA, Individually and On Behalf
Of All Other Persons Similarly Situated,

                 Plaintiff,

    v.

PARK HOTELS & RESORTS, INC. d/b/a HILTON
WORLDWIDE HOLDINGS, INC., HLT NY
WALDORF LLC, HILTON DOMESTIC
OPERATING CO. INC., and
WALDORF=ASTORIA MANAGEMENT LLC,

                 Defendants.

Case No.  1:20-cv-02797-RA

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
## OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

**DLA PIPER LLP (US)**
Joseph A. Piesco, Jr., Esq.
joseph.piesco@dlapiper.com
Garrett D. Kennedy, Esq.
garrett.kennedy@dlapiper.com
Alison M. Lewandoski, Esq.
alison.lewandoski@dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF RELEVANT FACTS ...........................................................................4

    I.   The Putative Class & Plaintiff's
        Employment at the Waldorf Astoria ............................................................4

    II.  Plaintiff's Claims Arise from the CBA and the BSA .....................................5

    III. The CBA's Mandatory Grievance and Arbitration Procedures Apply to Disputes
        Concerning Gratuities ......................................................................................7

    IV. Plaintiff is Employed at the New York Hilton
        & Executes an Arbitration Agreement ...........................................................7

    V.  The Court's Order & Plaintiff's Failure to Cure the FAC's Material Deficiencies..........8

LEGAL ARGUMENT.........................................................................................................11

    I.   Subject-Matter Jurisdiction Under CAFA Still Does Not Exist ...................11

        A.   Plaintiff's Article III Standing is Limited to
            Waldorf Astoria Banquet Services Employees.....................................12

        B.   There are Less Than 100 Members in the Putative Class......................13

    II.  Alternatively, Arbitration Should be Compelled ...........................................14

        A.   Plaintiff is Obligated to Arbitrate His Claims......................................14

        B.   Arbitration Must be on an Individual Basis..........................................16

    III. Plaintiff's SAC Fails to State a Claim .........................................................17

        A.   Plaintiff's Claims Fail as a Matter of Law...........................................18

    IV. Defendants HWH and HLT Should be Dismissed .......................................20

        A.   The Court Lacks Jurisdiction Over HWH ............................................20

        B.   Neither Entity is a Joint Employer.......................................................22

CONCLUSION....................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
    458 F. Supp. 2d 160 (S.D.N.Y. 2006)......................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................17

*Barry v. Curtin*,
    993 F. Supp. 2d 347 (E.D.N.Y. 2014) ..................................................................................12

*Chufen Chen v. Dunkin' Brands*,
    954 F.3d 492 (2d Cir. 2020)..................................................................................................20

*Commc'n Partners Worldwide, Inc. v. Main St. Res.*,
    2005 WL 1765712 (S.D.N.Y. July 26, 2005) ......................................................................22

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012)............................................................................................................14

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*,
    586 F. App'x 768 (2d Cir. 2014) ..........................................................................................21

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
    790 F.3d 411 (2d Cir. 2015)..................................................................................................11

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..............................................................................................................14

*Eka v. Brookdale Hosp. Med. Ctr.*,
    2016 WL 11263669 (E.D.N.Y. Sept. 2, 2016) ....................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)..............................................................................................................12

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    134 S. Ct. 736 (2014)............................................................................................................13

*Hugee v. SJC Grp., Inc.*,
    2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013)......................................................................22

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991)..................................................................................................17

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    12 N.Y.3d 132 (2009) ..................................................................................19

*Johnson v. D.M. Rothman Co.*,
    861 F. Supp. 2d 326 (S.D.N.Y. 2012) ........................................................16

*In re Kingate Mgmt. Ltd. Litig.*,
    2011 WL 1362106 (S.D.N.Y. Mar. 30, 2011) ...........................................14

*Kowalewski v. Samandarov*,
    590 F.Supp.2d 477 (S.D.N.Y. 2008) ..........................................................14

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ...............................................................................16

*Licciex rel. Licci v. Lebanese Canadian Bank*,
    SAL, 673 F.3d 50 (2d Cir. 2012) ............................................................20, 21

*Lopez v. Acme Am. Envtl. Co.*,
    2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) .............................................22

*Maldonado v. BTB Events & Celebrations, Inc.*,
    990 F. Supp. 2d 382 (S.D.N.Y. 2013).....................................................18, 19

*In re Michael Stapleton Assocs., Ltd.*,
    2018 WL 3962931 (S.D.N.Y. Aug. 17, 2018) ...........................................22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................14

*N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*,
    25 F. Supp. 3d 459 (S.D.N.Y. 2014).........................................................22

*Rabin v. Mony Life Ins. Co.*,
    387 F. App'x 36 (2d Cir. 2010) ..................................................................19

*Ross v. Bank of America*,
    524 F.3d 217 (2d Cir. 2008)........................................................................12

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (2008) ...................................................................................18

*Smith v. Manhattan Club Timeshare Ass'n, Inc.*,
    944 F. Supp. 2d 244 (S.D.N.Y. 2013)........................................................11

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)........................................................................20

iii

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
    559 U.S. 662 (2010) ...................................................................................16

*Stroud v. Tyson Foods, Inc.*,
    91 F. Supp. 3d 381 (E.D.N.Y. 2015) .........................................................20, 21

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006)........................................................................20

**Statutes & Other Authorities**

12 N.Y.C.R.R. 146.2.18(b) ................................................................................18

12 N.Y.C.R.R. 146.2.19(b) ................................................................................18

12 N.Y.C.R.R. 146.2.19(c) ................................................................................18

12 N.Y.C.R.R. 146.2.19(d) ................................................................................18

9 U.S.C. § 1 *et seq.*...................................................................................1, 22

9 U.S.C. § 2 (2014) ..........................................................................................14

28 U.S.C. § 1332(d) ..............................................................................1, 11, 13

Fed. R. Civ. P. 12(b)(1)................................................................1, 8, 11, 22

Fed. R. Civ. P. 12(b)(2)........................................................................1, 8, 22

Fed. R. Civ. P. 12(b)(6)........................................................................ *passim*

NYLL .......................................................................................................... *passim*

Defendants Park Hotels & Resorts Inc. (f/k/a Hilton Worldwide, Inc.) ("Park"), Hilton Worldwide Holdings Inc. ("HWH")[1], HLT NY Waldorf LLC ("HLT"), Hilton Domestic Operating Company Inc. ("Hilton Domestic"), and Waldorf=Astoria Management LLC ("WAM") (together, the "Defendants") respectfully submit this memorandum of law in support of their motion (the "Motion") to dismiss the Second Amended Complaint (ECF No. 46, the "SAC" or "Compl.") of Plaintiff Michael Morana ("Plaintiff" or "Morana"), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), or in the alternative, to compel Plaintiff's claims to individual arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq* ("FAA").[2]

## PRELIMINARY STATEMENT

This Court dismissed Plaintiff's First Amended Complaint (ECF No. 13, the "FAC") without prejudice because Plaintiff failed to demonstrate jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA").   (ECF No. 45, the "Order".)   While permitting Plaintiff to replead, the Court directed that any amended pleading must be brought in "good faith," and ordered that Plaintiff address specific issues in any such pleading.   Contrary to the Court's explicit instructions, the SAC clearly was not filed in "good faith:" it (i) is nearly verbatim to the FAC; (ii) adds demonstrably false – indeed, completely frivolous – allegations regarding two "Hilton" hotels in Albany and Saratoga, New York, that any reasonably prudent investigation would have revealed are ***franchised hotels*** that are not owned, managed or operated by any of the Defendants (and, thus, Defendants have absolutely nothing to do with these hotels

---

[1] The caption of the SAC misstates the proper name of "Park Hotels & Resorts Inc.," as well as, "Hilton Worldwide Holdings Inc."  Further, Plaintiff incorrectly alleges that Defendant Park is doing business as Hilton Worldwide Holdings Inc.  Plaintiff was informed of these errors (and public records clearly demonstrate same), but chose not to correct these mistakes in the SAC.

[2] A true and correct copy of the exhibit ("Ex. [_]") submitted in support of Defendants' Motion is annexed to the Second Supplemental Declaration of Joseph A. Piesco, Jr., dated May 28, 2021 ("Second Suppl. Piesco Decl.").

gratuities and administrative charges policies or practices); (iii) fails to cure any of the serious deficiencies noted by the Court in the Order, which led to the FAC's dismissal; and (iv) does not address the issues the Court expressly instructed Plaintiff to cover.[3]

This action involves claims by Plaintiff, a former New York Waldorf Astoria (the "Waldorf Astoria") banquet services employee and member of the New York Hotel and Motel Trades Counsel, AFL-CIO (the "Union"), who seeks to represent all tipped employees at all of Defendants' hotels throughout New York State (the "Putative Class"). Plaintiff contends that the Banquet Services Agreement (the "BSA") applicable to banquet services employees at the Waldorf Astoria failed properly to advise customers of the "split" between administrative and gratuity charges, as required by the New York Labor Law ("NYLL"). (*See* SAC, ¶¶ 58-87.)

The SAC fails to cure any of the deficiencies of its predecessor and properly should be dismissed for the same reasons set forth in the Court's Order. The Court rejected the FAC because it did not establish that the Putative Class exceeded 100 members, as required by CAFA, given that the only possible class Plaintiff could represent is limited to banquet services employees who worked at the Waldorf Astoria. In a futile attempt to fix this, the SAC now alleges that two "Hilton" hotels in Albany and Saratoga – hotels Plaintiff never worked at – have the "same" policies and practices as the Waldorf Astoria and the New York Hilton (another Hilton property where Plaintiff worked, yet remarkably tells the Court in a footnote he has no claim against). Based on these allegations, Plaintiff once again seeks to represent a Putative Class of all "tipped" employees for all "Hilton" hotels statewide. (*See e.g.*, SAC, ¶ 48.)

---

[3] On April 5, 2021, Defendants served Plaintiff and his counsel with a letter pursuant to Fed. R. Civ. P. 11 ("Rule 11"), setting forth Defendants' position that the SAC's allegations and claims are frivolous, not supported by existing law, and not made in good faith. (*See* Second Supp. Piesco Decl., Ex. A.) The Rule 11 letter was accompanied by the required Notice of Motion for Sanctions. (*Id.*) Simultaneous with the filing of the instant Motion, Defendants have filed a Motion for Sanctions seeking attorneys' fees and costs, and such other relief as the Court deems appropriate.

Putting aside Plaintiff's obvious lack of personal knowledge, these allegations are demonstrably false (and appear to be based on a visit to the hotels' websites).  Had Plaintiff or his counsel performed even the slightest due diligence, they quickly would have learned that ***neither*** hotel is owned, operated or managed by any of the Defendants; rather, each is independently owned, managed and operated by franchisees, and Defendants have nothing to do with these hotels' banquet services agreements or "policies" and "practices" relating to their gratuity and service charges.[4]

In addition, the SAC brazenly ignores the Order's instructions that any amended pleading "shall … address" issues relating to Plaintiff's Union membership, the governing Collective Bargaining Agreement (the "CBA"), and any other terms and conditions of his employment.  (*See* Order, p. 11.)  Presumably, Plaintiff ignored the Court's directive because supplying the required information would only have bolstered Defendants' arguments that he is bound by the mandatory arbitration provisions in the CBA and the arbitration agreement he executed at the New York Hilton.  Regardless, as set forth in Defendants' Motion to Dismiss the FAC (ECF No. 34, the "Initial Motion"), should the Court find CAFA jurisdiction exists, arbitration should be compelled because (i) the CBA requires that disputes relating to its terms – including over the scope of arbitrability – be arbitrated; and (ii) the agreement that Plaintiff executed with the New York Hilton separately mandates arbitration on an individual basis.[5]

---

[4] Remarkably, in opposing the Initial Motion (ECF No. 37, the "Opp."), Plaintiff relied on HWH's SEC filings.  Those same filings state, "[w]e do not own, manage or operate franchised hotels and do not employ the individuals working at these locations" (*see* Cottrell Decl., Ex. A, p. 12 [ECF No. 37-2]), while a simple public business records search shows that both hotels are franchised properties (*see* https://www.hilton.com/en/corporate/wp-content/uploads/2020/04/Franchise-Disclosure-Document-HGI_2020.pdf).

[5] As set forth in Argument, § II, *infra*, Defendants have endeavored to save the Court's time and resources by incorporating from the Initial Motion arguments and positions regarding Plaintiff's obligation to arbitrate.  For the Court's convenience, Defendants have summarized those arguments for the Court, with reference to the Initial Motion.

Beyond this, even if CAFA jurisdiction exists (it does not), the SAC should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As set forth in the Initial Motion, the BSA is entirely consistent with the NYLL and guidance from the New York Department of Labor (the "NYDOL") for such agreements.  Tellingly, Plaintiff *still* has not alleged (because he cannot do so in good faith) any specific provision of the BSA – the only document possibly relevant to his NYLL-gratuities claims – that is improper or inconsistent with the NYLL.  To the contrary, the SAC, like the FAC before it, purposely avoids any reference to the BSA's specific terms – and for good reason, as there simply is no basis for Plaintiff to claim the BSA violates the NYLL in any way.  That the SAC omits any such allegations is shocking, given that Defendants put the BSA directly before the Court in the Initial Motion, and the Court expressly noted that the FAC's failure to include factual contentions led to its dismissal.  (*See* Order, p. 8.)

Finally, HWH and HLT should be dismissed.  First, personal jurisdiction over HWH does not exist.  Second, neither HWH nor HLT employed Plaintiff, and Plaintiff alleges no facts possibly supporting a "joint employer" claim – a claim the Court held in the Order was not sustainable.

Accordingly, Defendants respectfully request that the Court dismiss the SAC in its entirety with prejudice, or alternatively, compel the action to arbitration pursuant to the FAA.

## STATEMENT OF RELEVANT FACTS

### I.    THE PUTATIVE CLASS & PLAINTIFF'S EMPLOYMENT AT THE WALDORF ASTORIA

Plaintiff was employed as a banquet services employee at the Waldorf Astoria from 1999 until March 2017, when the Waldorf Astoria closed for renovations.  (*See* SAC ¶ 7; *see also* Wilcox Decl., ¶ 6 [ECF No. 35].)  Throughout his employment, Plaintiff was represented by the Union

and employed pursuant to the CBA (or a predecessor agreement).[6]  (*See* Piesco Decl., Ex. B [ECF No. 36-2].)  While working there, Plaintiff's (and the Putative Class's) employer changed due to certain corporate transactions:  Plaintiff was employed by Park (then known as Hilton Worldwide, Inc.) until September 15, 2016; then by Hilton Domestic until January 1, 2017; and, last, by WAM until his separation in March 2017, when the hotel closed and all banquet services employees, including Plaintiff, were terminated.  (*See* Wilcox Decl., ¶¶ 7-8, 10.)

In connection with the Waldorf Astoria's closing, all banquet services employees, including Plaintiff, were offered severance in exchange for a general release (the "Release Agreement").  (*See* Wilcox Decl., ¶ 10; *see also* Piesco Decl., Exs. C-1 to C-3 [ECF Nos. 36-5, 6, 7].)  The Release Agreement contains a broad release of all claims, including all statutory and common law claims.  (*See* Wilcox Decl., ¶ 10; *see also* Piesco Decl., Exs. C-1 to C-3.)  According to WAM's business records, 96 of 162 of the banquet services employees executed the Release Agreement, leaving just 66 possible Putative Class members.  (*See* Wilcox Decl., ¶¶ 10-11.)  In response to the Initial Motion, and as noted by the Court in its Order, Plaintiff could not contest these facts.

## II.     PLAINTIFF'S CLAIMS ARISE FROM THE CBA AND THE BSA

While Plaintiff fails to address the issue in the SAC – notwithstanding the Court's express directive to the contrary (Order, p. 11) – Plaintiff was a member of the Union and subject to the CBA.  To this end, his claims arise from purported violations of the CBA and the Waldorf Astoria's BSA, which was drafted based on the CBA and negotiated by the Union.  Both documents expressly address how gratuities are to be paid to banquet services employees.  Article 47 of the CBA, entitled "Banquet Department" (sub-part, "Gratuities"), lays out the percentages to be

---

[6] The CBA was in effect from July 1, 2012, to June 30, 2019.

distributed as gratuities to the banquet servers.  (*See* Piesco Decl., Ex. B, pp. 39-40 ["[W]ith respect to banquet functions, a minimum gratuity equal to fifteen percent (15%) shall be paid to tip category employees (banquet servers and captains) . . . ."].)  Likewise, the BSA's "Gratuity & Administrative Charge" section details which portions of the service charge will be gratuities versus administrative service fees retained by management:

> **GRATUITY & ADMINISTRATIVE CHARGE: The combined gratuity and administrative charge that is in effect on the day of your Event will be added to your bill.  Currently, the combined gratuity and administrative charge is equal to 23.75% of the food and beverage, sundry and room rental total, plus applicable state and local tax.  A portion of this charge will be a gratuity as calculated by the following formula and fully distributed to servers, and where applicable, captains and/or bartenders assigned to the Event:**
>
> · **For functions held on the 4th floor and 18th floor Executive Meeting Center:  The gratuity will be the greater of: (i) 16.9% of Food & Room Rental and 18.4% of the Beverage total, or (ii) 15% of 96.3% of the combined Food & Beverage, Room Rental, Audio Visual Commission & other charges which are required by our Union contract to be subject to the combined gratuity.**
>
> · **All other Catering location Functions: The gratuity will be the greater of (i) 15.9% of the Food and Room Rental total and 17.9% of that amount in Beverage served for events inside the function room or 15% for all beverage service from a Service Bar; or (ii) 15% of 96.3% of the combined Food & Beverage, Room Rental, Audio Visual commission and other charges which are required by our Union contract to be subject to the combined gratuity.**
>
> **For all functions, the remainder of the combined gratuity and administrative charge (currently 23.75%) will be an administrative charge. This administrative charge is not a gratuity and is the property of the Hotel to cover discretionary costs of the Event.  We will endeavor to notify you in advance of your Event of any increases to the combined gratuity and administrative charge should different gratuities be in effect on the day of the Event pursuant to the applicable collective bargaining agreement.**

(Screenshot from Piesco Decl., Ex. A [ECF No. 36-1].)

III.   **THE CBA'S MANDATORY GRIEVANCE AND ARBITRATION PROCEDURES APPLY TO DISPUTES CONCERNING GRATUITIES**

The CBA sets forth a mandatory grievance and arbitration procedure.  (*See* Piesco Decl., Ex. B, pp. 20-21.)  Article 26 of the CBA, entitled "Complaints, Grievances and Arbitration" (the "Arbitration Article"), mandates that "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly" shall be subject to its procedures.   (*Id.*, p. 20.)    Further, it provides, "***[a]ny questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the [arbitrator's] jurisdiction, or authority, shall be submitted to the [arbitrator] in accordance with this Article.***"  (*Id.* [emphasis added].)

The parties' past practice and course of dealing reflects that the CBA's Arbitration Article broadly covers disputes over the terms and conditions of the banquet services employees' employment, ***including grievances over gratuities***.  (*See* Piesco Decl., Exs. D, E, F [ECF Nos. 36-8, 9, 10].)  In fact, several disputes resolved through these procedures addressed the allocations of revenue between banquet services employees and management, the central issue in the SAC.  (*See id.*, Exs. D, E.)

IV.   **PLAINTIFF IS EMPLOYED AT THE NEW YORK HILTON & EXECUTES AN ARBITRATION AGREEMENT**

In January 2018, Plaintiff was hired as a banquet server at the New York Hilton, a hotel managed, directly and/or indirectly, by HWH and Hilton Domestic.  (*See* SAC ¶ 28; *see also* Wilcox Decl., ¶¶ 13-14.)  During his onboarding, Plaintiff executed the Agreement re At-Will Employment and Arbitration (the "Individual Arbitration Agreement"), which provides:

> The Company and I further agree and acknowledge that final and binding arbitration shall be the exclusive forum to hear and decide any dispute between the Company and me . . . . Arbitration under this Agreement shall be before a single arbitrator in the county in

7

> which the dispute arose and will be conducted in accordance with the Federal Arbitration Act . . . . [T]his Agreement includes all common-law and statutory claims, including, but not limited to, any claim for breach of contract, unpaid wages . . . .

(*See* Wilcox Decl., ¶ 15; *see also* Piesco Decl., Ex. G [ECF No. 36-11].)

While the Individual Arbitration Agreement does not define "Company," there is no question Plaintiff signed it (*see* Wilcox Decl., ¶ 16), or that the "Company" includes Plaintiff's then-direct employer, Hotels Statler Company, Inc. and its direct and indirect parents and affiliated entities.  Moreover, Plaintiff claims (wrongly) all of the Defendants are "joint employers" (*see*, *e.g.*, SAC, ¶ 21); thus, he cannot argue Defendants are not encompassed within the "Company."

## V.      THE COURT'S ORDER & PLAINTIFF'S FAILURE TO CURE THE FAC'S MATERIAL DEFICIENCIES

On April 3, 2020, Plaintiff initiated the instant action, seeking to represent "[a]ll current and former hourly, non-exempt employees, including but not limited to servers, food servers, beverage servers, banquet servers, or other employees with similar job duties employed by Defendants in New York," based on claims of (i) Defendants' purported failure "to remit all service fee surcharges" to the Putative Class; (2) unjust enrichment on the same basis; and (3) failing to provide wage notices and statements required under the NYLL.  (*See* Compl., ¶ 3.)

After Plaintiff amended his initial Complaint, Defendants moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), or in the alternative, to compel individual arbitration under the FAA.  On March 26, 2021, the Court granted the Initial Motion, holding that Plaintiff failed to show subject matter jurisdiction under CAFA, as the Putative Class did not exceed 100 class members – the minimum for CAFA jurisdiction.  (*See* Order, pp. 10-11.)

In the Order, the Court held that Plaintiff's "boilerplate" allegations of commonality in service charge practices across all Hilton hotels in New York, pled "upon information and belief,"

did "not satisfy the threshold of plausibility" required for extending the Putative Class beyond the Waldorf Astoria. (Order, p. 8.) Specifically, the Court found Plaintiff failed to show any personal knowledge supporting commonality between the different hotels, nor did he allege any "factual information that makes the inference of culpability plausible." (*See id.*, pp. 7-8 ["Plaintiff has not plausibly alleged that the mandatory surcharge system, or any other challenged practice, was replicated at Defendants' other hotels."].) Thus, the Court accepted Defendants' undisputed evidence that the relevant class consisted of, at most, 66 banquet services employees who worked at Waldorf Astoria (excluding those who had executed separation agreements, *see* Facts, § I, *supra*) and thus failed to satisfy CAFA's minimum putative class size. (*See* Order, pp. 10-11.)

The Court permitted Plaintiff to replead if he "ha[d] a good-faith basis to do so," and further ordered that any amended pleading "shall address" the following:

> 1) whether Plaintiff is or has been a member of the New York Hotel and Motel Trades Counsel, AFL-CIO; 2) whether and to what extent any collective bargaining agreement governed the terms of Plaintiff's employment at the Waldorf Astoria during the proposed class period; and 3) whether and to what extent Plaintiff's employment at the Waldorf Astoria was subject to other written terms or conditions.

(Order, p. 11.)

Plaintiff subsequently filed the SAC. However, he failed to correct any of the deficiencies from the FAC, or even address those issues which the Court's Order expressly instructed him to cover. Instead, the SAC is nearly identical to the FAC, adding four new paragraphs (*see* SAC ¶¶ 28-31), editing two others (*see id.*, ¶¶ 32-33) and inserting a bizarre footnote in which Plaintiff contends that he seeks to represent a class of persons at the New York Hilton, but goes on to state

that he has no claim of his own and seeks no damages against the New York Hilton, as if by doing so he could escape his arbitration obligations (*see id.*, ¶ 28, n.1).[7]

In an effort to show "commonality," the SAC sets forth new allegations relating to gratuities "policies" and "practices" at "Hilton" hotels in Albany and Saratoga (*see* SAC, ¶ 31), which Plaintiff alleges are the same as the policies at the Waldorf Astoria.  These allegations, which clearly are based on nothing more than a visit to the hotels' websites, are completely frivolous, and it is obvious that neither Plaintiff (who has no personal knowledge about any of the practices of these hotels) nor his counsel performed the slightest due diligence before making them. Had they done so, it would have quickly become clear that these hotels *are franchised properties*, meaning they are not owned, operated or managed by any of the Defendants.  (*See* Second Supp. Wilcox Decl., ¶¶ 6-8.)  Rather, they are owned and operated by independent franchisees, who license the use of the "Hilton" name under a franchising arrangement.  (*See id.*, ¶¶ 2-5.) Defendants have nothing to do with whatever policies these franchised entities adopt with respect to banquet services charges.  (*See id.*, ¶¶ 6-8.)

Beyond this, Plaintiff persists in refusing to include in his SAC any actual provisions from the BSA that he contends is deficient, or any allegation relating to any other agreement at any other Hilton-owned (*i.e.*, non-franchised) hotel.  Indeed, other than generic allegations of similar policies, Plaintiff does not allege any "facts" regarding the "policies" at any other hotels (including the cited franchised hotels), or how they are similar to the "policies" at the Waldorf Astoria (or the New York Hilton).  Incredibly, he omits this even after the Court held that his claims were deficient (in part) because "he allege[d] nothing about the surcharge policies in place" at the New York Hilton

---

[7] Even if he could avoid his arbitration obligations (which he cannot), Plaintiff has traded one substantive obstacle for another:  he now concedes he has no "injury-in-fact" *vis-à-vis* the New York Hilton and, as such, he clearly has no standing whatsoever to represent any purported class of current and/or former employees from that hotel.

– a fact the Court found dispositive in refusing to extend the alleged Putative Class to that location – and the Court's statement that, it "would expect Plaintiff . . . to have made some allegations specific to those policies" in the FAC.  (Order, p. 8.)  The fact of the matter is there are no "policies" at issue.  The only relevant document for purposes of Plaintiff's NYLL claim is the BSA, and Plaintiff has not alleged, and cannot allege, that there is anything about the BSA that violates the NYLL.

Likewise, the SAC makes no additional allegations to support Plaintiff's "joint employer" claim.  The Order rejected Plaintiff's joint employer claim because, *inter alia*, "Plaintiff ma[de] no allegations about the particular role of any particular Defendant entity, or any particular facility.  Instead, Plaintiff broadly allege[d], upon information and belief, that Defendants engage in a joint enterprise." (Order, p. 9.)  Having continued to fail to do so, at best Plaintiff's Putative Class consists of 66 individuals who formerly were employed at the Waldorf Astoria.

## LEGAL ARGUMENT

## I.  SUBJECT-MATTER JURISDICTION UNDER CAFA STILL DOES NOT EXIST

In its Order, the Court held that Plaintiff failed to satisfy his burden of showing CAFA jurisdiction, the only alleged basis for jurisdiction.  The SAC does nothing to cure this defect.  This is because (i) Plaintiff still only has standing (if at all) to assert claims on behalf of banquet services employees at the Waldorf Astoria (not every "tipped" employee at every hotel owned or managed by Defendants); and (ii) there are less than 100 Putative Class members.  *See Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 249 (S.D.N.Y. 2013) (citing *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013); 28 U.S.C. §§ 1332(d)(2)-(6)).).

A court should dismiss an action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it.  *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015).  The plaintiff

bears the burden of proving jurisdiction.  *Barry v. Curtin*, 993 F. Supp. 2d 347, 351 (E.D.N.Y. 2014) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

A.   **Plaintiff's Article III Standing is Limited to**
     **Waldorf Astoria Banquet Services Employees**

To establish Article III standing, a plaintiff must demonstrate, *inter alia*, that he suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000).  The burden rests on the party asserting jurisdiction to clearly allege facts demonstrating standing.  *See Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008).

Like the FAC, the SAC purports to bring claims on behalf of "[a]ll current and former hourly, non-exempt employees, including but not limited to servers, food servers, beverage servers, banquet servers, or other employees with similar job duties employed by Defendants in New York . . . ."  (SAC ¶ 4.)  However, as the Order held regarding the FAC, "[t]he proposed class, which is limited to those who share common 'questions of law or fact,' . . . comprises only those employed as tipped banquet servers at [the Waldorf Astoria] during the relevant class period." (Order, p. 10.)

The SAC changes nothing: Plaintiff still seeks to represent a statewide class of all tipped workers but still fails to provide any "factual" basis for doing so.  As the Court held in the Order, Plaintiff's allegations of "commonality" across hotels – unchanged from the FAC to SAC – are deficient because they are "made on information and belief" and "do not satisfy the threshold of plausibility," given that Plaintiff failed to demonstrate either personal knowledge of such claims or any basis to infer commonality.  (Order, pp. 8-9 [citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)].)

The only substantive change from the FAC to the SAC is the addition of completely frivolous allegations, claiming that "Hilton" hotels in Albany and Saratoga have the "same" BSA policies and practices as the Waldorf Astoria and the New York Hilton.  (*See* SAC, ¶¶ 28-33.)  But this does nothing for Plaintiff.  As noted above, these hotels are owned, managed and operated ***by franchisees, not Defendants***.  (*See* Facts, § I.)  Any purported "similarity" between the policies and practices of these independently owned franchises clearly is irrelevant.  What is more, Plaintiff fails to cite to the allegedly deficient contents of any banquet services agreement in his SAC, much less sufficient to demonstrate that the same policies and practices are maintained across different hotels.

In short, there is no reason for this Court to deviate from the Order when Plaintiff's only additional allegations relate to two franchisees that Defendants have nothing to do with, by whom Plaintiff was never employed, and whose gratuities practices are not even spelled out in the SAC.  *See Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 174 (S.D.N.Y. 2006).  Nor is there any basis to expand the scope of any possible Putative Class beyond the Waldorf Astoria, given that Plaintiff alleges no "factual" allegations, other than the same generic "information and belief" contentions in the FAC, already rejected by the Court.  (*See* Order, p. 8.)

Finally, since Plaintiff claims he "is not seeking individualized recovery and is not basing his individual causes of action pleaded herein on Defendants' conduct at the New York Hilton" (SAC, ¶ 28, n.1), he clearly has no standing to represent its employees.  By disavowing he was injured by the New York Hilton, he necessarily confines his claims to the Waldorf Astoria.

**B.**     **<u>There are Less Than 100 Members in the Putative Class</u>**

CAFA jurisdiction does not exist when the proposed class consists of less than 100 members.  28 U.S.C. § 1332(d)(5); *see Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S.

161, 164 (2014) (remanding where class was less than 100 persons); *In re Kingate Mgmt. Ltd. Litig.*, 2011 WL 1362106, at *9 (S.D.N.Y. Mar. 30, 2011). Plaintiff's claims clearly are confined to the Waldorf Astoria and, as noted in the Order (pp. 10-11), there are at most 66 individuals in that Putative Class – well below CAFA's 100-person threshold. The SAC (like the FAC) should be dismissed because Plaintiff cannot satisfy CAFA's jurisdiction requirements.

## II.    ALTERNATIVELY, ARBITRATION SHOULD BE COMPELLED

### A.    <u>Plaintiff is Obligated to Arbitrate His Claims</u>

As previously argued, even assuming the Court were to find that CAFA jurisdiction exists, Plaintiff cannot escape his obligation to arbitrate his claims, and to do so on an individual basis. (*See* Initial Motion, pp. 12-18.) Defendants shall not waste the Court's time reciting those arguments, but rather incorporate by reference same as though fully set forth herein.

To summarize, the FAA mandates arbitration where an agreement to arbitrate involves interstate commerce. *See* 9 U.S.C. § 2 (2014); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "[w]here the contract contains an arbitration clause, there is a presumption of arbitrability," *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 489 (S.D.N.Y. 2008), as the FAA embodies a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*, 460 U.S. at 24-25. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

1.     <u>Plaintiff's Claims are Subject to the Individual Arbitration Agreement</u>

On January 18, 2018, Plaintiff executed the Individual Arbitration Agreement, agreeing to arbitrate "any dispute between the Company and [him] . . . in accordance with the Federal Arbitration Act . . . includ[ing] all common-law and statutory claims, including, but not limited to, any claim for . . . unpaid wages." (*See* Piesco Decl., Ex. G.)  Although this agreement does not define "Company," it is undisputed that Plaintiff executed this document (*see* Wilcox Decl., ¶ 16; *see also*, Opp., p. 12), and agreed to arbitrate any claims he may have against his employers, Hotels Statler Company LLC, and his successor employer Hotel Statler Employer LLC, both wholly-owned subsidiaries of Defendants HWH and Hilton Domestic.  Given Plaintiff's "joint employer" claim, there is no vagary as to who the "Company" is – it is, as Plaintiff alleges, "all Defendants."

2.     <u>The CBA's Arbitration Article Requires Plaintiff to Arbitrate His Claims</u>

In its Order, the Court directed that any SAC "shall" address Plaintiff's Union membership, if a CBA governed his employment with the Waldorf Astoria, and if any other terms and conditions governed his employment.  (*See* Order, p. 11.)  The SAC completely ignored this directive.

As set forth in the Initial Motion, it is undisputed that Plaintiff's employment was governed by the CBA, which contains a broad mandatory arbitration provision that has historically been used to resolve wage and hour disputes, including over gratuities.  (*See* Facts § 3, *supra*.)  Thus, Plaintiff's claims should be compelled to arbitration under the CBA because: (i) it expressly reserves the question of arbitrability for an arbitrator (*see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); and (ii) Plaintiff's claims plainly arise from, are dependent on, and are inextricably intertwined with, the CBA and the Union-negotiated BSA.  (*See* Piesco Decl., Ex. B.)  Such arguments were fully briefed in the Initial Motion, and are respectfully incorporated herein.  (*See* Initial Motion, pp. 12-18.)

15

a.    Plaintiff's Claims are Preempted by the LMRA

As set forth in the Initial Motion (pp. 13-14), even assuming, *arguendo*, the issue of arbitrability was not reserved for an arbitrator (and it is), Plaintiff's claims are contractual in nature and arise from and require the application and interpretation of the CBA.  Therefore, each claim is preempted by the Labor Management Relations Act ("LMRA").  Section 301 of the LMRA "preempts state law claims that involve interpretation of an underlying CBA." *Eka v. Brookdale Hosp. Med. Ctr.*, 2016 WL 11263669, at *5-6 (E.D.N.Y. Sept. 2, 2016), *adopted*, 2016 WL 6143343 (E.D.N.Y. Sept. 30, 2016).

The record is clear, and unchanged from the FAC to the SAC: Plaintiff's claims arise from, and are dependent on, the CBA and the Union-negotiated BSA.  ***Plaintiff's own Union negotiated the precise terms of the BSA and the amount of gratuities which are at issue***, and any resolution of his claims – all premised on allegations that said BSA was misleading to customers – requires substantial analysis of the CBA's terms.  (*See* Piesco Decl., Ex. B, pp. 39-40 [setting forth minimum gratuity for "tip category employees"]; Piesco Decl., Ex. A ["Gratuity & Administrative Charge," setting out portions of gratuities and administrative charges]).  Accordingly, Plaintiff's claims are preempted by the LMRA.  *See Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332-33 (S.D.N.Y. 2012) (Section 301 preempted plaintiffs' NYLL claims).

**B.    Arbitration Must be on an Individual Basis**

The Supreme Court has made clear that class arbitration can only be compelled when an arbitration agreement "expressly" contemplates same.  *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  There is nothing in either arbitration agreement concerning class arbitration.  Therefore, the Court should require Plaintiff to arbitrate his claims on an individual basis only.

16

### III.   PLAINTIFF'S SAC FAILS TO STATE A CLAIM

Plaintiff alleges that the Waldorf Astoria's BSA misled or confused customers about the breakdown in services fees between administrative fees and gratuities to service staff.  (*See* SAC ¶¶ 3-4, 25, 58-70.)  The SAC, like the FAC, fails to include *any* allegations that any customers actually were misled or confused, nor does it recite *any* language from the BSA that purportedly violates the NYLL.  This is remarkable in light of the fact that the Court dismissed Plaintiff's FAC, in part, because "[n]one of [Plaintiff's] boilerplate allegations contains any factual content that can be attributed to any specific Defendant, or to the particularities of this specific case."  (Order, p. 9.)  This clearly is deliberate, as the actual language in the BSA plainly delineates the Gratuity & Administrative Charge "split" *precisely* as required by the NYLL § 196-d.

A Rule 12(b)(6) motion to dismiss is proper where a complaint fails to "state a claim upon which relief can be granted."  To survive such a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a viable claim.  *Ashcroft*, 556 U.S. at 678.

Evidence outside of the complaint may be considered on a motion to dismiss where such is integral to the complaint, and should not be disregarded "simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference."  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).  In such instances, the court "should not transform a 12(b)(6) motion into a summary judgment motion where, as here, the motion has been filed in lieu of an answer, and the parties have neither completed discovery

nor formally requested that the motion be converted." *Giant Grp., Ltd. v. Sands*, 142 F. Supp. 2d 503, 506 (S.D.N.Y. 2001).

## A.      Plaintiff's Claims Fail as a Matter of Law

NYLL § 196-d prohibits employers from retaining, directly or indirectly, any part of an employee's gratuity, or any charge purported to be a gratuity.  This applies to "mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees."  *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008).  "[T]he standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer . . . ."  *Id.* at 79.

There is a "rebuttable presumption that any charge in addition to charges for food, beverage . . . and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity."  12 NYCRR 146.2.18(b).  An employer may rebut this by showing sufficient notification was provided "to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity."  12 NYCRR 146.2.19(b).  To do so, the employer must include ***in the contract with the customer*** that the administrative charge is (i) for administration; (ii) not purported to be a gratuity; and (iii) not to be distributed as gratuities to service employees. 12 N.Y.C.R.R. 146.2.19(c); *see also Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 391 (S.D.N.Y. 2013).

When providing a "combination charge" – like the Gratuities and Administrative Charge in the BSA – with a portion of a gratuity to employees and a portion going to management – such must be "broken down into specific percentages or portions, in writing to the customer."  12 NYCRR 146.2.19(d).  The NYDOL issued the following "illustrative but non-exhaustive" list of factors addressing whether a reasonable customer would believe a service charge to be a

gratuity, including, *inter alia*, font size and prominence of the notice, if the label denoting the charge would confuse patrons (noting that the label "administrative fee" is clearer than "service charge"), and if the notice discloses the portion to be distributed to the service staff. *Maldonado*, 990 F. Supp. 2d at 390 (citing NYDOL, Op. Ltr. RO-09-0181 (Mar. 11, 2010)).

As demonstrated by the screenshot in Facts, § II, *supra*, the BSA lays out, with specific percentages, the amount of the charge that will be a gratuity "fully distributed to servers and where applicable, captains and/or bartenders assigned to the Event." (Piesco Decl., Ex. A.) It explains that the remainder of the charge "will be an administrative charge. This administrative charge is not a gratuity and is the property of the Hotel." (*Id.*) The notice section is in normal-sized, bold, italicized text, filling nearly half a page – it cannot be missed. (*See id.*) No reasonable customer could be confused or misled by the Gratuities and Administrative Charge section of the BSA.[8]

Similarly, Plaintiff's unjust enrichment claim fails as a matter of law. It is well-settled that "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009). Plaintiff's gratuities claim stems from a contractual agreement, *i.e.*, the CBA (and the Union-negotiated BSA); thus, his claim for unjust enrichment must be dismissed. *See, e.g.*, *Rabin v. Mony Life Ins. Co.*, 387 F. App'x 36, 42 (2d Cir. 2010).

---

[8] Given that Plaintiff's primary NYLL § 196-d claims fails, his derivative recordkeeping claims under NYLL §§ 195(1) & (3) also fail as a matter of law. *See Kone v. Joy Constr. Corp.*, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016).

19

## IV.     DEFENDANTS HWH AND HLT SHOULD BE DISMISSED

### A.     The Court Lacks Jurisdiction Over HWH

Plaintiff bears the burden of establishing personal jurisdiction.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).  "[A] plaintiff must make a prima facie showing that jurisdiction exists" by demonstrating (i) "a statutory basis for personal jurisdiction over the defendant," and (ii) "that exercise of jurisdiction . . . is in accordance with constitutional due process principles."  *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015) (citing *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)).

Personal jurisdiction is determined by the law of the state in which the district is located.  *See Ashcroft*, 470 F.3d at 495.  Under New York law, a plaintiff must show either that the defendant "was present and doing business in New York within the meaning of C.P.L.R. § 301, known as general jurisdiction, or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302, known as specific jurisdiction."  *Stroud*, 91 F. Supp. 3d at 385 (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)).  General jurisdiction permits a court to hear all claims against an entity, while specific jurisdiction allows it to hear only those disputes arising out of the entity's contacts with the forum.  *See Stroud*, 91 F. Supp. 3d at 385.

#### 1.     The Court Lacks General Jurisdiction Over HWH

The exercise of general personal jurisdiction is unconstitutional unless a corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum."  *Chufen Chen v. Dunkin' Brands*, 954 F.3d 492, 498 (2d Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).  That a foreign corporation is affiliated with entities in New York is insufficient.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (foreign corporation with New York affiliates not "at home" in New York).

HWH is not "at home" in New York: it is a Delaware publicly traded holding corporation (NYSE: HLT), and its principal place of business is in Virginia.  (*See* Wilcox Decl. ¶ 9.)  It does not have ***any*** employees, and it never has conducted business in New York.[9]  (*See id.*)

### 2.    The Court Lacks Specific Jurisdiction Over HWH

Specific jurisdiction may be exercised where a defendant (i) "transacts any business" in New York, and (ii) the cause of action "arises from" such transaction.  *Licci*, 673 F.3d at 60 (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).  To show that a defendant "transacts business" in New York, a plaintiff must demonstrate the defendant "purposely availed itself of the privilege of conducting activities within New York"  *Stroud*, 91 F. Supp. 3d at 389 (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)).

In determining specific jurisdictions, courts consider four non-dispositive factors: (i) if the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and if, thereafter, the defendant visited New York to meet with the parties to the contract; (iii) what choice of law clause exists; and (iv) if the contract requires notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.  *See Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014).

Specific jurisdiction over HWH does not exist here, as Plaintiff does not allege any facts to support that HWH "transacted business" in New York.  In fact, he merely alleges in conclusory fashion that all Defendants are a "joint employer."  (SAC, ¶ 21.)  But HWH is nothing more than a publicly traded holding company (NYSE: HLT); it does not transact ***any*** business in New York

---

[9] That HWH had subsidiaries, direct or indirect, in New York is irrelevant because subsidiaries cannot confer personal jurisdiction over their parents, absent clear evidence of control (not even alleged here).  *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 342 F. Supp. 2d 207, 214-15 (S.D.N.Y. 2004).

(*see* Wilcox Decl., ¶ 9).  *See Commc'ns Partners Worldwide, Inc. v. Main St. Res.*, 2005 WL 1765712, at *4 (S.D.N.Y. July 26, 2005).

  B.    **Neither Entity is a Joint Employer**

The SAC repeats verbatim the "joint employer" allegations from the FAC, which the Court held to be insufficient in its Order.  (*See* Compl, ¶¶ 20-21; Order, p.9 [citing FAC ¶¶ 16, 21].) Defendants respectfully incorporate herein their arguments from the Initial Motion, as clearly nothing has changed.  (*See* Initial Motion, pp. 24-25.)  Suffice it to say, to survive a motion to dismiss, plaintiffs must "plead sufficient facts to support a finding that the defendant is an 'employer.'"  *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 471 (S.D.N.Y. 2014).  Plaintiff still has done nothing in that regard.

Plaintiff was employed directly by (i) Park, until September 15, 2016; (ii) then by Hilton Domestic, until January 1, 2017; and (iii) finally by WAM, until March 2017.  (*See* Wilcox Decl., ¶¶ 7-8.)  The SAC, again, alleges ***no facts*** supporting that HWH or HLT exercised any control, formal or functional, over Plaintiff.  *See In re Michael Stapleton Assocs., Ltd.*, 2018 WL 3962931, at *3 (S.D.N.Y. Aug. 17, 2018); *Lopez v. Acme Am. Envtl. Co.*, 2012 WL 6062501, at *5 (S.D.N.Y. Dec. 6, 2012) (same); *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, at *8-10 (S.D.N.Y. Aug. 14, 2013) (same).  Plaintiff's joint employer claims properly should be rejected, and his claims against HWH and HLT dismissed with prejudice.

                                    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's SAC pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), or in the alternative, compel Plaintiff's claims to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

Dated: New York, New York
     May 28, 2021

**DLA PIPER LLP (US)**

By: /s/Joseph A. Piesco, Jr., Esq.

Joseph A. Piesco, Jr., Esq.
joseph.piesco@dlapiper.com
Garrett D. Kennedy, Esq.
garrett.kennedy@dlapiper.com
Alison M. Lewandoski, Esq.
alison.lewandoski@dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Tel: (212) 335-4500; Fax: (212) 335-4501

*Attorneys for Defendants*