USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/14/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL MORANA, *individually and on
behalf of all other persons similarly
situated*,

                              Plaintiff,

              v.

PARK HOTELS & RESORTS, INC.,
HILTON WORLDWIDE HOLDINGS,
INC., HLT NY WALDORF LLC, HILTON
DOMESTIC OPERATING CO. INC.,
WALDORF=ASTORIA MANAGEMENT
LLC,

                              Defendants.

---

20-CV-2797 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Michael Morana brings this putative class action on behalf of individuals who

worked as tipped service workers in New York for Defendants Park Hotels & Resorts, Inc., Hilton

Worldwide Holdings, Inc., HLT NY Waldorf LLC, Hilton Domestic Operating Company Inc., and

Waldorf=Astoria Management LLC (collectively, "Defendants"). Plaintiff alleges that

Defendants failed to distribute charges that were purported to be gratuities as required by the New

York Labor Law ("NYLL"). On March 26, 2021, the Court granted Defendants' motion to dismiss

Plaintiff's First Amended Complaint on the ground that Plaintiff had failed to establish subject

matter jurisdiction under the Class Action Fairness Act ("CAFA"). Now before the Court is

Defendants' motion to dismiss Plaintiff's Second Amended Complaint or, in the alternative, to

compel arbitration. For the reasons that follow, the Court finds that Plaintiff has once again failed

to meet his burden of establishing jurisdiction under CAFA. The motion to dismiss is therefore

granted on that basis.  Also before the Court is Defendants' motion for sanctions.  That motion is denied.

**BACKGROUND**

The following facts are drawn from the Second Amended Complaint ("Complaint"), the Declaration of Owen Wilcox ("Wilcox Dec."), the Second Supplemental Declaration of Owen Wilcox ("Supp. Wilcox Dec."), the Declaration of Joseph Piesco ("Piesco Dec."), the Second Supplemental Declaration of Joseph Piesco ("Supp. Piesco Dec."), the May 28, 2021 and June 21, 2021 Declarations of Joseph Piesco in support of Defendants' motion for sanctions ("Piesco May 28 Dec." and "Piesco June 21 Dec."), and the exhibits thereto.

## I.    Plaintiff's Allegations

Plaintiff is a citizen of New York.  Compl. ¶ 7.  On information and belief, Defendants Park Hotels & Resorts Inc. ("Park"), Hilton Worldwide Holdings, Inc. ("HWH")[1] and Hilton Domestic Operating Company Inc. ("Hilton Domestic") are Delaware corporations with principal places of business in Virginia, and Defendants HLT Waldorf LLC ("HLT") and Waldorf=Astoria Management LLC ("WAM") are Delaware limited liability companies.  *Id.* ¶¶ 9-12.  "Plaintiff is informed, believes, and thereon alleges that Defendants, individually and/or jointly, own, operate, and manage hotels, restaurants, and resorts . . . in New York" and employ hourly employees in New York.  *Id.* ¶ 14.

From 2014 until March 2017, Plaintiff worked as a full-time banquet server at the Waldorf Astoria.  *Id.* ¶ 24.  According to Defendants, Plaintiff had three different "direct employer[s]" during this time.  "From April 2014 until September 15, 2016, Park . . . was Plaintiff's direct employer"; "[f]rom September 15, 2016 until January 1, 2017, Hilton Domestic . . . was Plaintiff's

---

[1] Defendants assert that Park and HWH are distinct entities.  *See* Supp. Wilcox Dec. ¶ 1 & n.1.  Plaintiff accepts this characterization of Defendants' corporate structure.  Accordingly, this opinion treats them as separate entities.

direct employer";[2] and from January 1, 2017 to March 2017, WAM was Plaintiff's direct employer.  Wilcox Dec. ¶ 8.  While at the Waldorf Astoria, Plaintiff was paid an average fee of $120 per event plus tips.  Compl. ¶ 24.

According to Plaintiff, Defendants "routinely" add to the total customer cost for banquet services a mandatory "gratuity and administrative charge surcharge."  *Id.* ¶ 25.  This charge is identified in the banquet services agreement ("BSA") that is provided to customers.  *See id.* ¶ 28. Plaintiff alleges that Defendants "structure the terms of this surcharge in such a way" that a "reasonable customer is unable to discern how much of the total portion of the surcharge will be remitted to non-exempt service workers and managerial non-service workers."  *Id.*  Specifically, "the way these service fees are depicted to customers" purportedly gives customers the mistaken belief that the mandatory surcharges "are to be remitted in total to the service staff as gratuities." *Id.* ¶ 26.  In practice, however, Defendants allegedly pay banquet servers only "a portion" of the surcharge and retain the remainder for themselves and/or to pay non-service workers.  *Id.* ¶ 27.

After the Waldorf Astoria closed in March 2017, Plaintiff worked as a banquet server at the New York Hilton Midtown ("Hilton Midtown") from January 2018 to March 2020.  *Id.* ¶ 28. According to Defendants, Plaintiff's employers during that time were Hotels Statler Company, Inc. and Hotels Statler Employer LLC ("the Statler companies"), both of which were "owned, directly and/or indirectly, by" Defendants HWH and Hilton Domestic.  Wilcox Dec. ¶¶ 13-14. Plaintiff alleges that he "saw and read many of the standardized banquet agreements utilized by the [Hilton Midtown], which contained 'notification' language relating to the automatic surcharge

---

[2] This paragraph of the Wilcox Declaration gives the full name of Plaintiff's direct employer as "Hilton Domestic Operating Company, LLC."  It is unclear whether "Hilton Domestic Operating Company Inc."—the full name of Defendant Hilton Domestic—and "Hilton Domestic Operating Company, LLC" are distinct entities or the same entity. Because Defendants represent in their brief that Defendant Hilton Domestic is the entity being described in this paragraph of the Wilcox Declaration, MOL at 5, the Court assumes that Defendants intend to assert that Defendant Hilton Domestic was Plaintiff's direct employer.

tacked on for banquet services that is nearly-identical to the language used at the Waldorf Astoria." Compl. ¶ 28.  He asserts that customers of the Hilton Midtown and the Waldorf Astoria "regularly expressed their confusion to Plaintiff and the putative Class members about the surcharge, and could not readily discern what portion of the . . . automatic surcharge would be remitted to the servers as gratuity payments, if any." *Id.* ¶ 30.  According to Plaintiff, the Hilton Midtown also has "a policy and practice of retaining a portion of the combined 'gratuity and administrative charge' charged to its customers . . . and/or using a portion of the surcharges to pay non-service workers." *Id.*  Plaintiff states, however, that he is "not seeking individualized recovery and is not basing his individual causes of action pleaded herein on Defendants' conduct at the [Hilton Midtown]." *Id.* n.1.

Plaintiff identifies two other hotels in New York whose event pricing contains similar surcharge language: the Saratoga Hilton in Saratoga Springs, New York, and the Hilton Albany (which is presumably located in Albany, New York). *Id.* ¶ 31.  Plaintiff's knowledge of the surcharge practices of these two hotels appears to be derived from viewing their publicly available websites. *See id.* nn. 2-4.

Based on Plaintiff's conversations with supervisors and his "extensive work experience with Defendants across multiple hotels/facilities," he "is informed, believes, and thereon alleges that this same, or substantially similar, mandatory surcharge system is used across each of the Defendants' facilities throughout New York." *Id.* ¶¶ 28, 33.  Accordingly, he seeks to represent a class that he defines as:

> All current and former hourly, non-exempt employees, including but not limited to servers, food servers, beverage servers, banquet servers, or other employees with similar job duties employed by Defendants in New York any time starting six years prior to the filing of this Complaint until resolution of this action.

*Id.* ¶ 48.  Plaintiff alleges that members of the class are similarly situated to him because they, among other things, were and are employed by Defendants; perform work materially similar to Plaintiff in facilities owned, operated, or managed by Defendants; are paid on a per-event rate basis; perform their jobs under Defendants' supervision and using materials and technology approved and supplied by Defendants; receive wages that are determined by common systems and methods that Defendants select and control; and are required to abide by common work, time and pay policies in the performance of their jobs.  *Id.* ¶¶ 37-42.  According to Plaintiff, "Defendants jointly exercised control over Plaintiff and Class members with respect to their employment."  *Id.* ¶ 16.  He "is informed and believes that the number of New York Class members exceeds 100." *Id.* ¶ 50.

Plaintiff raises four causes of action.  First, he claims Defendants' practices violate NYLL § 196-d, which prohibits employers from retaining "any charge purported to be a gratuity for an employee," *id.* ¶ 59, because "[u]nwary customers" pay the service fee added to their banquet charge "reasonably believing that the entirety of the service fee will be remitted to the service workers as gratuity payment, as is the widely accepted custom throughout the hospitality industry," *id.* ¶ 62.  Second, Plaintiff asserts that Defendants' conduct constitutes unjust enrichment because Defendants retain funds without distributing them to their "intended beneficiaries."  *Id.* ¶¶ 73-76. Finally, Plaintiff alleges that Defendants' policies violate the NYLL's requirements of providing accurate wage statements and written notices of pay.  *Id.* ¶¶ 80, 85.

## II.     Defendants' Jurisdictional Assertions

Defendants assert that upon the Waldorf Astoria's March 2017 closure, "the employment of all banquet services employees was terminated and each of these employees (including Mr. Morana) was offered a severance package in exchange for executing a voluntary separation

agreement and general release (the 'Release Agreement')."  Wilcox Dec. ¶ 10.  According to

Defendants' business records, "the Waldorf Astoria employed no more than 162 banquet services

employees during the relevant period of time," and 96 such employees executed the Release

Agreement, meaning "that only 66 banquet services employees did not execute the Release

Agreement as of the date hereof."  *Id.* ¶ 11.  By signing the Release Agreement, an employee

expressly "waive[s] any right or ability to be a class or collective action representative or to

otherwise participate in any putative or certified class . . . based on such a claim in which [the

Waldorf Astoria New York Hotel] or any released party [which includes the Waldorf Astoria's

"parents, subsidiaries, and successors"] as set forth in this Agreement is a party."  Piesco Dec. Ex.

C-1 ¶ 4.

      "[T]here are approximately 10 hotels in New York owned and/or managed by Defendants."

Wilcox Dec. ¶ 5.  But these hotels, Defendants assert, do not include the Saratoga and Albany

Hilton hotels, because those hotels are "owned and operated by . . . independent franchisees."

Supp. Wilcox Dec. ¶ 3.  Defendants state that they "do not own, operate, or manage the day-to-

day operations of the Hilton Albany or the Saratoga Hilton": specifically, they "do not employ the

staff or have any day-to-day control over the personnel at" those hotels and "have no involvement

whatsoever, or any control over, the franchisee[s'] policies or practices relating to banquet services

charges."  *Id.* ¶¶ 6, 8.

## III.  Procedural History

      Plaintiff initiated this action on April 3, 2020.  After Plaintiff amended his complaint once,

Defendants moved to dismiss.  The Court granted Defendants' motion, concluding that Plaintiff

had failed to establish that there were at least 100 putative class members as required under CAFA.

In so doing, the Court found that Plaintiff's First Amended Complaint had "not plausibly alleged

that the mandatory surcharge system, or any other challenged practice, was replicated at Defendants' other hotels" besides the Waldorf Astoria, and Defendants had proffered evidence that the number of eligible class members from that hotel (*i.e.*, tipped banquet servers who had not waived their right to sue) was only 66. *Morana v. Park Hotels & Resorts, Inc.*, No. 20-cv-2797 (RA), 2021 WL 1164010, at *3-5 (S.D.N.Y. Mar. 26, 2021) ("*Morana I*").

When it dismissed Plaintiff's First Amended Complaint, the Court ordered that any subsequent complaint state "whether Plaintiff is or has been a member of the New York Hotel and Motel Trades Counsel, AFL-CIO; 2) whether and to what extent any collective bargaining agreement governed the terms of Plaintiff's employment at the Waldorf Astoria during the proposed class period; and 3) whether and to what extent Plaintiff's employment at the Waldorf Astoria was subject to other written terms or conditions." *Id.* at *5. The Second Amended Complaint did not address these issues. During a December 2021 telephone conference, the Court allowed Plaintiff to submit a supplemental letter addressing these topics, to which Defendants replied.

On or about May 4, 2021, Defendants informed Plaintiff that they intended to seek sanctions under Federal Rule of Civil Procedure 11 for various purported infirmities in the Second Amended Complaint. *See* Piesco May 28 Dec. Ex. A. As required by Rule 11, Defendants served the notice of motion on Plaintiff and indicated that they would give Plaintiff 21 days to withdraw the Second Amended Complaint before filing the contemplated sanctions motion. *See id.* Ex. B. Plaintiff did not do so, and Defendants filed their motion for sanctions concurrently with their motion to dismiss. Plaintiff's counsel asserts that at a telephone conference during the 21-day safe harbor period, he admitted to one of the infirmities that Defendants had identified and asked for

consent to file a new complaint, which Defendants' counsel denied.  *See* Sanctions Opp. at 10;

Hogg Sanctions Dec. Ex. 1.

## DISCUSSION

I.      **Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

     A.      **Legal Standard**

A district court must dismiss an action for lack of subject matter jurisdiction when it "lacks

the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110,

113 (2d Cir. 2000).  Ultimately, "[a] plaintiff asserting subject matter jurisdiction has the burden

of proving by a preponderance of the evidence that it exists."  *Id.*  In determining whether that

burden has been met at the motion to dismiss stage, the Court must accept as true all material

allegations in the complaint and construe the complaint in favor of the plaintiff.  *See Cortlandt St.

Recovery Corp. v. Hellas Telecommunications, S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

However, if a defendant makes "a fact-based Rule 12(b)(1) motion," the Court may refer to

evidence outside of the pleadings.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir.

2016).  "In opposition to such a motion, the plaintiff[] will need to come forward with evidence of

[his] own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1)

motion . . . reveal the existence of factual problems in the assertion of jurisdiction."  *Id.*[3]  "If the

extrinsic evidence presented by the defendant is material and controverted, the district court will

need to make findings of fact in aid of its decision" as to jurisdiction.  *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard "does not prevent a plaintiff

---

[3] Unless otherwise noted, case quotations omit all internal quotation marks, citations, omissions, alterations, and footnotes.

from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  Nonetheless, the Court only accepts as true factual allegations that are "non-conclusory." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017).  In other words, a "conclusory allegation on information and belief is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level." *Id.* at 226; *see Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").

### B.    Analysis

As with Plaintiff's previous complaint, the sole basis asserted for subject matter jurisdiction is CAFA.  Compl. ¶ 5.  Plaintiff asserts that CAFA applies in part because the "number of proposed class members in New York is believed to exceed 100."  *Id.*; *see* 28 U.S.C. § 1332(d)(5)(B) (providing that district courts do not have jurisdiction over any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").  Defendants argue that CAFA jurisdiction remains lacking because Plaintiff has failed to plausibly allege that the number of putative class members is at least 100.  The Court agrees.

### 1.    The Workers at the Franchise Hotels Are Not Members of the Putative Class

The Court first finds that the employees of the Albany and Saratoga hotels (the "franchise hotels") may not be considered members of the putative class because Defendants had no control over the operation of those hotels, including their gratuity policies, or over those hotels' workers.

Defendants contend that they do not manage the daily operations of the franchise hotels, and specifically have "no involvement whatsoever, or any control over," their policies regarding

banquet service agreements.  Supp. Wilcox Dec ¶¶ 3-8.  Although Plaintiff does not respond to this argument in his opposition to the motion to dismiss, he asserts in his sanctions opposition that "Defendants' position rests on a faulty premise, *i.e.*, that Defendants could not possibly be 'employers' for wage-and-hour purposes over workers at those (purported) franchise properties." Sanctions Opp. at 9-10.  Specifically, Plaintiff contends that Defendants are joint employers of the workers at those hotels.  *Id.* at 13-16.

"[A] worker may be employed by more than one entity at the same time." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003).[4]  Although "[t]he Second Circuit has not yet considered whether a franchisor can qualify as a joint employer," *Cordova v. SCCF, Inc.*, No. 13-cv-5665 (LTS) (HP), 2014 WL 3512838, at *4 (S.D.N.Y. July 16, 2014), courts in this District have routinely applied the Second Circuit's standard tests for joint employment to assess a franchisor's employer status; this Court will do the same.  There are "two tests for determining whether an employment relationship exist[s] for the purposes of the [NYLL], one relating to formal control, the other to functional control." *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 205 (S.D.N.Y. 2014).   The formal test considers four non-dispositive factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).  The functional test considers six non-dispositive factors: (1) whether the alleged employer's premises and equipment were used for the plaintiff's work; (2) whether the plaintiff shifted from one putative joint employer's premises to that of another; (3) the extent to which the

---

[4] Because the FLSA and the NYLL have "nearly identical" standards for determining employer status, *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014), the Court draws the following analysis from cases assessing joint employer status under the FLSA.  *See Camara v. Kenner*, No. 16-cv-7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018) (collecting cases equating the standards).

work performed by the plaintiff was integral to the overall business operation; (4) whether the plaintiff's work responsibilities remained the same regardless of where he worked; (5) the degree to which the alleged employer or its agents supervised the plaintiff's work; and (6) whether the plaintiff worked exclusively or predominantly for one defendant. *Lopez v. Pio Pio NYC, Inc.*, No. 13-cv-4490 (HB), 2014 WL 1979930, at *2 (S.D.N.Y. May 15, 2014); *see Zheng*, 355 F.3d at 72.

Under these standards, courts in this Circuit have deemed a franchisor to be a joint employer when the franchisor "imposed mandatory training programs for employees at the [franchise] Hotel"; "maintained the right to inspect the [franchise] Hotel at any time"; "imposed mandatory recordkeeping requirements on" the franchisee; "established standards and controls that include standards, specifications, and policies for construction, furnishing, operation, appearance, and service of the [franchise] Hotel"; "retained the unlimited right to make changes to the manner in which the [franchise] Hotel is operated"; "regularly performed both scheduled and unannounced audits and inspections of the [franchise] Hotel . . . to review . . . compliance with their financial recordkeeping requirements"; and "were aware that Plaintiffs were not paid gratuities owed to them but failed to stop the unlawful wage practices and policies that were perpetrated." *Ocampo v. 455 Hosp. LLC*, No. 14-cv-9614 (KMK), 2016 WL 4926204, at *6 (S.D.N.Y. Sept. 15, 2016). Similarly, a franchisor defendant was found to be a joint employer when it allegedly "guided franchisees on how to hire and train employees"; "set and enforced requirements for the operation of franchises"; "required franchises to employ recordkeeping of operations, including systems for tracking hours and wages and for retaining payroll records"; "monitored employee performance"; "exercised control, directly or indirectly, over the work of employees'" and "exercised control over their franchises' timekeeping and payroll practices." *Olvera*, 73 F. Supp. 3d at 207.

Plaintiff pleads none of these facts.  Instead, he merely asserts that Defendants "jointly exercised control over Plaintiff and Class members with respect to their employment" and "jointly, directly, or indirectly, control the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff and Class members."  Compl. ¶¶ 16, 21.  But such "conclusory recitations of the prongs of the economic reality test, absent any specific factual allegations of control, are insufficient to plausibly allege" joint employer status.  *Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*, No. 17-cv-4058 (RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018).  Indeed, Plaintiff does not even make the conclusory allegation that Defendants formally or functionally control the workers at these franchise hotels—largely because he does not mention that these hotels are franchises at all.  In other words, Plaintiff "alleges nothing from which the Court can infer that [Defendants] had control over, knew of, or had reason to know of [the franchisees'] employment actions with respect to" the employees of the franchise hotels.  *Rivers v. Int'l House of Pancakes*, No. 20-cv-2471 (JPO), 2021 WL 860590, at *3 (S.D.N.Y. Mar. 8, 2021) (dismissing a claim against a franchisor when the plaintiff had failed to plead any of the factors for formal or functional control); *see Acharya v. 7-Eleven, Inc.*, No. 18-cv-08010 (PAC), 2019 WL 6830203, at *3 (S.D.N.Y. Dec. 13, 2019) (same); *Chen v. Domino's Pizza, Inc.*, No. 09-cv-0107, 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009) (dismissing a complaint against a franchisor defendant because it "simply ma[de] the conclusory statement that [the franchisor] is an employer within the meaning of" the FLSA and state law and  "fail[ed] to make any specific allegations against [the franchisor] to support this contention").

Plaintiff argues that he does not need to allege facts about Defendants' control over the franchise hotels to the same degree of specificity as the facts alleged in *Ocampo* and *Olvera* because, unlike the plaintiffs in those cases, he does not have access to the franchise agreements.

*See* Sanctions Opp. at 15 (arguing that "[a] pleadings allegation made on the basis of information and belief is generally appropriate where information is particularly within the defendant's knowledge and control"). But Plaintiff does not make *any* allegations—on the basis of information and belief or otherwise—that Defendants exercised formal or functional control over the franchise hotel workers. It is true that Plaintiff has made allegations regarding the similarity between the franchise hotels' event gratuity policies and the Waldorf Astoria's and Hilton Midtown's banquet service agreements. But alleging that a franchisor and a franchisee have a similar policy is not the same as alleging that the franchisor controls the franchisee's employees to such a degree that it can be considered a joint employer. Moreover, Plaintiff's argument that allegations on information and belief are permitted when information is particularly within a defendant's knowledge and control is misplaced: Defendants have affirmed that they are not parties to the franchise agreements, indicating that such information is not within their particular knowledge or control, Supp. Wilcox Dec. ¶ 7, and Plaintiff has presented no facts to the contrary.

Because Plaintiff has failed to allege that Defendants are joint employers of the franchise hotel workers, Defendants cannot be liable for any NYLL violations those individuals may or may not have suffered—meaning that those workers cannot be class members for purposes of Plaintiff's NYLL class claims.[5]

Plaintiff has also failed to allege that these workers are part of the class for purposes of Plaintiff's unjust enrichment claim. To state such a claim, a plaintiff must plead (among other

___

[5] Nor does Plaintiff allege, or plead facts to suggest, that Defendants and the owners, operators, or managers of the franchise hotels operate as a "single integrated enterprise." *See, e.g., Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020) ("[M]ultiple corporate entities can be liable as the employer under a joint employer theory based on the theory that they operate as a single enterprise with a significant interrelation of operations."); *Perez v. Westchester Foreign Autos, Inc.*, No. 11-cv-6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013) ("In determining whether multiple defendants constitute a single employer, courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.").

things) that the "defendant was enriched . . . at plaintiff's expense." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). But because these hotels are not owned or operated by Defendants and Defendants do not employ those hotels' workers, it is not plausible that Defendants were enriched by any policies at those hotels. *See, e.g.*, *Lopez v. Acme Am. Env't Co.*, No. 12-cv-0511 (WHP), 2012 WL 6062501, at *7 (S.D.N.Y. Dec. 6, 2012) (dismissing an unjust enrichment claim where the moving defendants "did not employ [a company's] cleaners and were not responsible for their wages," meaning that "the complaint fail[ed] to state how [the defendants] benefited from [the company's] failure to pay its employees overtime wages").

Accordingly, the Court finds that the workers of the franchise hotels are not part of the putative class.

### 2.    The Workers at the Hilton Midtown Are Not Members of the Putative Class

Having dispensed with Plaintiff's allegations regarding the workers at the franchise hotels, the Court considers those regarding the workers at the Hilton Midtown and concludes that those individuals may not be considered part of the class either.

Plaintiff does not state which of the five Defendants were his employers while he was at the Hilton Midtown. Defendants offer evidence, unrefuted by Plaintiff, that his "direct employers" at the Hilton Midtown were the Statler companies, which were themselves owned, "directly and/or indirectly," by two Defendants: Hilton Domestic and HWH. Wilcox Dec. ¶¶ 13-14. But this is insufficient to impute onto Hilton Domestic and HWH responsibility for the alleged policies at the Hilton Midtown, because a direct or indirect owner of an employer is not automatically a joint employer. Rather, a plaintiff raising a joint employer theory must allege that such an owner had formal or functional control over employees for NYLL liability to attach. *See, e.g.*, *Lopez*, 2012 WL 6062501, at *5. Here, Plaintiff does not attempt even a boilerplate allegation that Hilton

Domestic and HWH (or any other Defendant) formally or functionally control the Hilton Midtown workers; rather, he merely makes the conclusory statement that all Defendants are "joint employers." For reasons similar to those stated above, the Court concludes that Plaintiff's allegations are insufficient to plead joint employer status.

Nor does Plaintiff plead facts showing—or indeed, even assert—that the Statler companies constitute a single enterprise with either Hilton Domestic or HWH by virtue of those Defendants' direct or indirect ownership of the Statler companies. "A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise . . . of which examples may be parent and wholly-owned subsidiary corporations." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005). "In determining whether multiple defendants constitute a single employer, courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Perez v. Westchester Foreign Autos, Inc.*, No. 11-cv-6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013). Plaintiff has failed to allege any of those four factors, either in his pleadings or in response to Defendants' evidence that Plaintiff's direct employers at the Hilton Midtown were separate entities. *See, e.g.*, *Apolinar v. R.J. 49 REST.*, LLC, No. 15-cv-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (finding that plaintiffs had failed to allege a single enterprise, even after alleging "common ownership and a common purpose," when their allegations failed to "establish that the Moving Corporate Defendants had an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer" or that the "Moving Corporate Defendants had any sort of direct employer responsibility over them, such as the ability to hire or fire, or set work hours or job

responsibilities"); *Solis v. ZEP LLC*, No. 19-cv-4230 (JGK), 2020 WL 1439744, at *8-9 (S.D.N.Y. Mar. 24, 2020) (rejecting single integrated enterprise claims based on similar pleading failures).

To be sure, a defendant cannot be shielded from liability simply by inserting an intermediary employer company between itself and individual workers; "in determining whether a particular defendant is an employer, the court is not bound by the niceties of formal corporate relationships." *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020). The Court's conclusion, rather, is grounded in the fact that Plaintiff has not alleged any facts supporting the inference that any Defendant employed the Hilton Midtown workers as a matter of "economic reality," *id.* The workers at that hotel may thus not be considered members of the putative class.

### 3. Plaintiff Has Standing to Sue Only Park, Hilton Domestic, and WAM

The Court further concludes that Plaintiff has not pleaded facts supporting his standing to sue HWH and HLT Waldorf, separate and apart from their employer status or lack thereof. "[F]or every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and [only] at that point standing is satisfied." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007); *see* 1 Newberg on Class Actions § 2:5 (5th ed.) ("Generally, class representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members."). To achieve class standing, the named plaintiff must allege that "he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant," and that "such conduct implicates the same set of concerns as the conduct alleged to have caused injuries to other members of the putative class *by the same defendants*." *NECA-IBEW*

*Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (emphasis added).

Plaintiff states that he "is not seeking individualized recovery and is not basing his individual causes of action pleaded herein on Defendants' conduct at the New York Hilton Midtown." Compl. ¶ 28 n.1. Without Plaintiff "basing his . . . causes of action" on the events at the Hilton Midtown, however, the Court does not see how he has standing to sue HWH—even if HWH had been adequately pleaded as a joint employer. Nor does the Court see how Plaintiff has standing to sue HLT Waldorf, the final Defendant, with whom Plaintiff does not allege any sort of employment relationship. *See, e.g., Yapuna v. Global Horizons Manpower Inc.*, 254 F.R.D. 407, 412 (E.D. Wash. 2008) (dismissing Fair Labor Standards Act claims brought against an employer whom none of the named plaintiffs had worked for even though the named plaintiffs had identical employment contracts with their own employers). Again, Plaintiff attempts to collapse all the Defendants together by characterizing them as "joint employers"—but he alleges no facts indicating that HWH or HLT Waldorf formally or functionally controlled him and the putative class or that those entities should be considered a single enterprise with Park, Hilton Domestic, or WAM.

Accordingly, the Court dismisses Plaintiff's claims against HWH and HLT Waldorf and concludes that Plaintiff has only pleaded facts sufficient to assert standing with respect to his claims against the entities that employed Plaintiff at the Waldorf Astoria: Park, Hilton Domestic, and WAM.

### 4.      Plaintiff Has Failed to Establish Jurisdiction Under CAFA

Having significantly narrowed the scope of Plaintiff's claims and the proper Defendants, the Court must now consider whether Plaintiff has plausibly alleged that those Defendants

employed 34 banquet servers in New York during the class period in addition to the 66 banquet servers from the Waldorf Astoria.[6]  He has not.  Simply put, Plaintiff has failed to plead that any of the remaining Defendants—Park, Hilton Domestic, and WAM—are the employers, as that term is understood under the NYLL, of any banquet servers other than those at the Waldorf Astoria. While it may well be conceivable that one or more of these Defendants employed banquet workers at the eight other hotels Defendants own, operate, or manage across the state, the Court cannot assume that to be the case; indeed, the facts available regarding Plaintiff's employers at two of Defendants' hotels indicate that there may be little overlap in employers from hotel to hotel.  Given Plaintiff's inadequate joint employer allegations and the demonstrated variety of employers across the New York hotels that Defendants own, operate, and/or manage, Plaintiff must do more to allege that the remaining Defendants were the employers of banquet servers at additional New York hotels that had similar banquet service agreements.  Accordingly, the Court concludes that Plaintiff has still failed to plausibly allege the existence of 100 class members as required by CAFA.

## II.    Leave to Amend

Ordinarily, leave to amend is freely granted.  But "[a] plaintiff need not be given leave to amend if [he] fails to specify . . . how amendment would cure the pleading deficiencies in [his] complaint."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  Leave to amend should also be denied when amendment would be futile.  *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).

---

[6] Contrary to Plaintiff's assertions, the putative class is limited to tipped banquet workers, as opposed to all tipped employees.  Putting aside the allegations about the workers at the franchise hotels, Plaintiff's allegations about Defendants' policies address only banquet service agreements.  He does not allege, or even suggest, that the same purportedly illegal "structure" exists in any other contract or document written by Defendants concerning gratuities (such as, for instance, by alleging that customers of a hotel bar or restaurant receive a bill that implies that the full amount of a mandatory service charge goes to the customer's waiter or bartender as a gratuity).

Although Plaintiff requests leave to amend, he does not state what additional facts he could plead that would cure the identified jurisdictional deficiencies; indeed, when the Court offered Plaintiff the opportunity to conduct jurisdictional discovery after these motions had been fully briefed and Plaintiff had the benefit of seeing Defendants' jurisdictional arguments, Plaintiff declined to do so.  This lack of diligence does not support granting leave to amend.

Even if Plaintiff had set forth what additional facts he could plead that would cure the jurisdictional deficiencies, he could not plead additional facts that would state a viable claim, making amendment futile.  In their prior motion to dismiss, Defendants submitted an exemplar of an unsigned Waldorf Astoria banquet services agreement with an anonymous customer.  Piesco Dec. Ex. A.  Plaintiff does not dispute the authenticity or accuracy of that document, nor does he argue that the language of that particular agreement is different from similar agreements in Defendants' other New York hotels—in fact, he alleges that the language in the Hilton Midtown agreements is "nearly identical" to those of the Waldorf Astoria.  Compl. ¶ 28.  Because Plaintiff incorporates the agreements by reference in his Second Amended Complaint, the Court may consider this exemplar agreement.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  The agreement explicitly breaks down the percentage of the "gratuity & administrative charge" that must be distributed to staff as gratuity and the percentage of the charge that is merely an administrative charge:

> GRATUITY & ADMINISTRATIVE CHARGE: The combined gratuity and administrative charge that is in effect on the day of your Event will be added to your bill.  Currently, the combined gratuity and administrative charge is equal to 23.75% of the food and beverage, sundry and room rental total, plus applicable state and local tax.  A portion of this charge will be a gratuity as calculated by the following formula and fully distributed to servers, and where applicable, captains and/or bartenders assigned to the Event:
>
> For functions held on the 4th floor and 18th floor Executive Meeting Center:  The gratuity will be the greater of: (i) 16.9% of Food & Room Rental and 18.4% of the

Beverage total, or (ii) 15% of 96.3% of the combined Food & Beverage, Room Rental, Audio Visual Commission & other charges which are required by our Union contract to be subject to the combined gratuity.

All other Catering location Functions: The gratuity will be the greater of (i) 15.9% of the Food and Room Rental total and 17.9% of that amount in Beverage served for events inside the function room or 15% for all beverage service from a Service Bar; or (ii) 15% of 96.3% of the combined Food & Beverage, Room Rental, Audio Visual commission and other charges which are required by our Union contract to be subject to the combined gratuity.

For all functions, the remainder of the combined gratuity and administrative charge (currently 23.75%) will be an administrative charge. This administrative charge is not a gratuity and is the property of the Hotel to cover discretionary costs of the Event.  We will endeavor to notify you in advance of your Event of any increases to the combined gratuity and administrative charge should different gratuities be in effect on the day of the Event pursuant to the applicable collective bargaining agreement.

Piesco Dec. Ex. A at 7.  Although this language certainly requires a customer to perform some mathematical calculations, it describes the fee as a "gratuity & administrative charge" rather than a "service charge"; clearly delineates the gratuity portion of the charge from the administrative charge portion; appears in normal-sized, bold, and italicized text in the main body of the agreement; and explicitly states that the administrative charge portion of the fee "is not a gratuity and is the property of the Hotel."  Accordingly, no reasonable person would read this agreement and believe that the entire "gratuity & administrative charge" went to gratuity.[7]  *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 332 (S.D.N.Y. 2010) (concluding that "no reasonable jury could find that a reasonable customer would believe that [a] service charge was a gratuity" under similar circumstances); *Ahmed v. Morgan's Hotel Grp. Mgmt., LLC*, 160 A.D.3d 555, 555-56 (N.Y. App.

---

[7] Plaintiff argues that "notwithstanding" the BSA's "service charge disclaimer," "Defendants must provide 'adequate notification,' not only in their contracts (like the BSA) with customers, but also 'on any menu and bill listing prices." Sanctions Opp. at 12 (quoting 12 NYCRR § 146.2.19(c)).  But the Second Amended Complaint does not appear to allege that any menus or bills lacked the requisite explanation; the only documents it describes are "banquet service agreements."  Compl. ¶ 28.  Nor does Plaintiff otherwise identify or describe a document separate from the document submitted by Defendants—be it a contract, bill, or menu—that allegedly lacked the requisite fee breakdown.

Div. 2018) (concluding that "[n]o reasonable customer would have been confused" when a banquet order "reflected two separate charges" and "notified customers that the gratuity would be distributed to the staff and that the administrative charge was not a gratuity but the property of the hotel").

Accordingly, leave to amend is denied.

## III.    Motion for Sanctions Under Federal Rule of Civil Procedure 11

### A.    Legal Standard

"[A] district court that lacks subject matter jurisdiction over an action still may impose sanctions pursuant to Rule 11." *Chemiakin v. Yefimov*, 932 F.2d 124, 127 (2d Cir. 1991). If a party has received "notice and a reasonable opportunity to respond," a court may "determine[] that Rule 11(b) has been violated" and "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). As relevant here, Rule 11(b) requires that "[b]y presenting to the court a pleading," an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). The Second Circuit has held that a pleading violates Rule 11 when, "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact," *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002), or when "it is clear under existing precedents that a pleading has no chance of success and

there is no reasonable argument to extend, modify, or reverse the law as it stands," *Corroon v. Reeve*, 258 F.3d 86, 92 (2d Cir. 2001).

"The standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003). But the decision to impose sanctions should be "made with restraint," *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999), and a court must "resolve all doubts in favor of the signer" of the pleading, *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

### B.    Analysis

Defendants argue that sanctions are justified on four grounds: (1) Plaintiff's claims regarding the franchise hotels are frivolous and in bad faith; (2) Plaintiff failed to comply with the Court's directive to include certain information in his amended complaint; (3) Plaintiff's claims have no factual or legal basis; and (4) there is no good-faith reason for Plaintiff to continue to name HWH and HLT Waldorf as defendants because there is no personal jurisdiction over those defendants. Keeping in mind that "courts may issue Rule 11 sanctions only in extraordinary circumstances," *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008), the Court declines to do so here.

Defendants first fault Plaintiff and counsel for not realizing that the Albany and Saratoga hotels were franchises. Based on the limited information available to the Court, however, this appears more likely to be an isolated factual error than a failure to conduct a reasonable inquiry. *See Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (citing with approval a Fourth Circuit case stating that Rule 11 sanctions "do not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact"). It is not obvious from these

hotels' websites that they are franchises, and the failure to proactively research that question falls short of objective unreasonableness, as there was no apparent reason to suspect they were franchises.  While "a court may impose sanctions . . . for refusing to withdraw an allegation or claim even after it was shown to be inaccurate," *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017), Plaintiff's counsel apparently believed that the Second Amended Complaint's allegations remained accurate even after Defendants' Rule 11 letter on the logic that the allegations of similar policies at additional hotels showed that Defendants controlled those hotels' workers. While this position was legally incorrect, that conclusion was not so "patently obvious" that sanctions are warranted.  *Id.* at 201.

The Court also declines to impose sanctions based on Plaintiff's failure to include information in his Second Amended Complaint that the Court directed him to include.  Counsel submitted a sworn declaration representing that this was an inadvertent oversight.  Hogg Sanctions Dec. ¶ 3.  Defendants counter with an affirmation that Plaintiff's counsel had instead stated that this omission was a deliberate choice made on the belief that the Court's directive was "inappropriate" and "unlawful."  Supp. Piesco Dec. ¶ 5.  Regardless of which version of the facts is true, disregarding the Court's pleading instructions here—while ill-advised—is not the sort of conduct contemplated by Rule 11(b), which concerns statements that are made in a pleading, not statements that are omitted from a pleading.  To be sure, the Court does not approve of counsel's apparent decision to let his oversight sit uncorrected rather than seek permission from the Court to amend, but failing to follow the Court's guidance in this instance is not sanctionable.

Nor will the Court impose sanctions on the ground that Plaintiff's claim has no factual or legal basis.  The Court agrees with Defendants that no reasonable customer would read the banquet services agreement and be confused as to what portion of the "gratuity & administrative charge"

constituted gratuity and what portion constituted the administrative charge—but while Plaintiff's contrary position is meritless, it falls short of frivolity or absolute baselessness.

Finally, the Court finds that sanctions are unwarranted for Plaintiff's naming of HWH and HLT Waldorf as defendants. The Court's prior opinion did not reach the issue whether there was personal jurisdiction over these defendants. While it did conclude that Plaintiff had failed to allege joint employer status, Plaintiff may have misread the prior opinion as suggesting that pleading facts about other hotels' gratuity policies, without more, would cure the joint employer allegations. *See Morana I*, 2021 WL 1164010, at *4 (stating that "the Complaint does not allege factual information about any general similarities between Defendants' hotels that would render the inference of a common surcharge policy plausible" and immediately proceeding to find the joint employer allegations insufficient). Accordingly, the Court finds that continuing to name these Defendants does not rise to the level of objective unreasonableness.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted but their motion for sanctions is denied. The Clerk of Court is respectfully directed to terminate the motions at docket numbers 51 and 55 and to close this case. SO ORDERED.

Dated: March 14, 2022
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge